## THE MARYLAND HOTEL CO. ET. AL. *vs.* THE BALTIMORE ENGRAVING CO., ETC.

*Mandatory Injunction—Change in Lower Floor of Building Affecting Access by Tenant to Upper Floor—Reasonable Elevator Service— Right of Tenant to Maintain Signboard—Action at Law and not Injunction Proper Remedy in this Case.*

Plaintiff company was the lessee for five years of certain rooms on the seventh floor of an L shaped building which had an entrance on Calvert street and another on Baltimore street. There were two elevators and two stairways to the seventh floor, but the means of access ordinarily used by plaintiff and its customers led by a hall from Calvert street to the elevator and adjoining stairway at the rear end of the part of the building fronting on that street. Plaintiff's lease provided for the use of the rooms "with elevator service," without designating which elevator, and made no mention of stairways. A signboard at the Calvert street entrance contained plaintiff's name and location. Subsequently, the defendant company became the lessee of all the Calvert street building subject to the unexpired lease of the seventh floor to plaintiff. Defendant expended over $30,000 in converting the rest of the building into a hotel. During the making of these alterations negotiations were going on for the purchase by defendant of plaintiff's lease, but they did not result in a sale. When the alterations were completed, access to the Calvert street elevator could only be had on the first floor by going through the cafe of the hotel or through an area, which approach was less direct than had formerly existed, and defendant removed plaintiff's signboard and also closed a doorway on the stairs between the sixth and seventh floors. Plaintiff filed a bill for a mandatory injunction requiring defendant to restore to its original condition the hallway on Calvert street or to construct a private entrance way for plaintiff, and to furnish therefrom elevator service to the seventh floor, and also the use of the stairway. *Held,*

1st. That there was no implied condition in plaintiff's lease that the subdivision of the lower floors of the building should remain as it was when the lease was made, and that the defendant had the right to make

changes in the part of the building leased to it, provided plaintiff had a reasonably convenient access to the elevator.

2nd. That although the alteration in the building may have caused inconvenience and loss to the plaintiff yet it did not amount to such a destruction of its rights as to require the interference of equity by injunction.

3rd. That the lease did not authorize plaintiff to maintain a signboard in the hallway of the first floor and its removal by defendant is not ground for an injunction.

4th. That since the plaintiff still has the use of the elevator, although in a different manner from that formerly existing, and since plaintiff stood by without objecting while defendant made its costly improvements, it would now be oppressive and unjust to require defendant to destroy those improvements, and consequently the mandatory injunction asked for, which is a matter resting in the sound discretion of the Court, should not have been granted.

5th. That the case is not a proper one for equitable relief, but the plaintiff company should be remitted to its right to sue at law for such damages as it sustained by reason of defendant's interference with its business.

Appeals from a decree of the Circuit Court No. 2, of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*James W. Denny and John H. Dinneen,* for the Maryland Hotel Co., appellant:

The decree appealed against is erroneous and should be reversed for the following reasons:

(1.) Because the plaintiff had a full, complete and adequate remedy at law, and equity had not jurisdiction.

(2.) Because, even if the plaintiff had a right to appeal to a Court of equity, which is not admitted, his remedy was a preventive injunction *in limine,* and not the harsh and unusual remedy of mandatory injunction. The conduct of the plaintiff's officers, who in this matter acted for it, in lying in wait for the defendants by permitting them to spend large sums of money in improving their own property without giving them notice of any well-founded reason for not making them, amounts

to laches and bad faith, and disentitles the plaintiff to the relief prayed by its bill.

(3.) Because the plaintiff, even if entitled to maintain a suit in equity against the defendants for the grievances complained of, which is not admitted, cannot lawfully maintain this suit because in it, it has violated the fundamental principle of pleading, which forbids uniting in one suit or action two or more separate, distinct and inconsistent causes of action against different defendants, who may have different defences, and each of whom may not have any interest in, or knowledge of, the defence to be made by his co-defendant. In this case, as now made by the record, the plaintiff has united with a cause of action against the News Company, arising *ex contractu* from an alleged breach of covenant in a lease, another and distinct cause of action against these appellants arising *ex delicto*, for an act claimed to be a tortious invasion of its property rights. These inconsistent matters cannot be united in one suit.

(4.) Because, even if such a suit as this could be maintained upon the case stated in the bill, the plaintiff, or its officers and agents who are real plaintiffs, as the " Company " is but a mere name to give a seeming importance to an unimportant business, have not acted, either in the matters out of which this litigation arose, or in the litigation itself since it began, in such way as to commend themselves or their case to the favorable consideration of a Court of equity, or to entitle them to relief which is granted, not *ex debito justitiae*, but *ex gratia*, and only to those who come into equity having done equity, or are ready to do equity.

(5.) Because the relief prayed by the bill, and granted by the decree appealed from, would work greater injustice and hardship to the defendants if granted, than would be done by its denial to the plaintiff, and in such case a Court of equity will decline to interfere, especially, as has been the case here, when there has been an unreasonable and unexplained delay on the part of the plaintiff in invoking the aid of the Court.

(6.) Because, even if the plaintiff is entitled to maintain this suit, which is denied, it has failed utterly and signally to prove

any of the material facts upon which a decree in its favor can be founded. All the material allegations of the bill and amended bill have been responsively and explicitly denied by the answers, and are not only not proved by the plaintiff's evidence, but are in most cases positively disproved by defendants.

(7.) Because the decree goes farther than the pleadings, and proof in the case warrant, even if the Court should be of the opinion that the plaintiff is entitled to a decree in its favor in any event, in this, that it undertakes to give the plaintiff a *private* and *exclusive* right of way through the defendant's premises when the utmost extent to which its title is asserted in the record is to a right of way *in common* with the other tenants and occupants of the building.

*James M. Ambler* (with whom were *Barton, Wilmer* & *Stewart* on the brief), for the Evening News Building Co. appellant.

*William S. Thomas* (with whom were *N. Winslow Williams and Henry W. Williams* on the brief), for appellee:

The decree of the Court, (1.) granted to the appellee the free and unobstructed use of the stairway to 4 South Calvert street, and enjoined the defendants, Callaghan and the Maryland Hotel Company, to open the door between the seventh and sixth floors of 4 South Calvert Street.

(2.) It directed The Maryland Hotel Company within sixty days to construct at its expense a private entrance way, four feet wide, from an entrance to the said building on South Calvert Street to the elevator on the first floor for the use of the appellee, its agents and patrons, or at the option of the defendant to restore the hallway on the first floor as it was at the time of the lease made to the appellee.

(3.) The defendants, Callaghan, the Maryland Hotel Company and D. W. Thomas, were directed to permit the appellee to erect a small wooden sign two feet, six inches square in the hallway at the entrance to 4 South Calvert street, where for-

merly stood the directory board.    (4.) The Maryland Hotel
Company, so long as it remains in possession of the elevator,
shall provide elevator service for the plaintiff during the hours
the same is operated, and that it shall not disconnect a call-bell
from the plaintiff's premises to the said elevator.    (5.) That
the appellee was entitled to an inquiry of what sum, if any,
should be paid to it by the defendants, Charles W. Callaghan,
the Maryland Hotel Company and the Evening News Build-
ing Company for the grievances complained of, which sum to
be awarded, if any, was reserved for the future order of the
Court.    (6.) The bill was dismissed as against the News Pub-
lishing Company.

1.  Appellee's right to use the stairway, hallway *and* have
elevator service.    The implied covenants of the plaintiff's lease
are that it shall have access to and from its premises by all the
open and usual ways necessary or in use on the property when
the lease was made or without which the enjoyment of the
several portions could not be fully had and people are pre-
sumed by law to contract for property with reference to the
then condition of the property: *Schaidt's case*, 66 Md. 146;
*Duval* v. *Duval*, 21 Md. 149; *Kilgore* v. *Ashcom*, 5 H. & J.
82 ; *McTavish* v. *Carroll*, 7 Md. 353, 360; *Oliver* v. *Hook*,
47 Md. 309, 311; *Mitchell* v. *Sepiell*, 53 Md. 264; *Burns* v.
*Gallagher*, 62 Md. 473; *U. S.* v. *Appleton*, 1 Sumner Rep,
500; *Wheelton* v. *Burrows*, L. R. 12 Ch. D. 31; *Morris* v.
*Edgington*, 3 Taunton, 24; *Ponfret* v. *Ricroft*, 1 Wm. Saun-
ders, 321.  "The limits and extent of the alley is the last inch as
well as the first inch, and a fence placed upon it is an invasion
of the plaintiff's right." *Bump* v. *Sanner*, 37 Md. 621.  Ways
may be so well defined as to bring them within the class of
easements or quasi easements known as continuous and appa-
rent, and hence pass by implied grant.    The tendency of
modern decisions is to broaden the meaning of "way of neces-
sity" so as to pass ways by implication.    *Eliason* v. *Grove*, 85
Md. 227.

Tenant has right of way over staircases and entries, knocker
on door, &c., at all hours, day and night.    *Loney* v. *McLean*,

129 Mass. 35; *Underwood* v. *Barrows*, 7 C. & P. Rep. 26; *MacLennan* v. *Royal Ins, Co.*, 39 Upper C. Rep. 515. A way once fixed becomes irrevocable, *Powers* v. *Harlow*, 53 Mich. 507.

2. The sign is a fixture, and the agreement in regard to it did not vary or change the lease; it did not have to be in writing and parol evidence was admissible to prove it. It was erected when the defendants acquired rights in the property and they were charged with notice of plaintiff's rights to maintain it. *Walker* v. *Schindel*, 58 Md. 367. Where a sign is on a different part of the building than the part rented some time before the lease is made, the law will imply a license from the owner to so maintain it. *Perry* v. *Skinner*, 116 Mass. 129. See also on signs—*Riddle* v. *Littlefield*, 53 N. H. 503; *Lowell* v. *Straton*, 145 Mas. 1–12. Upon the principle of legal necessity the appellee is entitled to the sign on a board in the hallway. *McTavish* v. *Carroll*, 7 Md. 352.

3. The testimony in the case as interpreted by law, gives to the appellee the use of the stairway and hallway as completely as if these ways were expressly mentioned in the lease, and it is to the extent of this use, part of the premises leased, it is shown that the beneficial use of the premises requires that the appellee shall have restitution of these ways. · That the entrance through Calvert street as now constituted is wholly unfit for the appellee's business, and that its patrons refuse to use these entrances, thus showing that the trespass goes to the destruction of the ways in the character in which they were enjoyed. The entrance through the business office of the News Publishing Company by way of Baltimore street or Grant street, the appellee has no right to use except such as grows out of the permission of the News Publishing Company, and this entrance is totally inadequate to its needs as is shown by the testimony. That company claims the right to close this way whenever it sees proper, and the bill of complaint against it has been dismissed, so that the appellee is in constant danger of being "bottled up," so to speak, in an establishment employing twelve men, having an extensive business and large

plant, and for which it has punctually paid $550 per year and complied with every covenant and agreement in its lease.

It is respectfully submitted that a stronger case for equitable interference cannot be found. The right of a Court of equity to issue a mandatory injunction to restrain the destruction or interference of easements, is well established. In *Schaidt* v. *Blaul*, 66 Md. 141, a bill for a mandatory injunction was issued to compel the removal of a wall and stable from an alley, over which the complainant had a right of way to a creek. In *Roman* v. *Strauss*, 10 Md. 89; injunction granted to restrain laying rails in an alley, approved in *Gore* v. *Brubaker*, 55 Md. 90. See also *Riverdale Park Co.* v. *Westcott*, 74 Md. 325.

In *Sanders, &c.*, v. *Grosven Mansions Co.*, 48 Weekly Rep. 570, an injunction was issued to restrain the defendant from operating a restaurant in a house rented for flats, on account of the smell. In *Remhart* v. *Mentase*, 38 W. R. 10, an injunction was issued to compel the defendant to remove a hot-air pipe which heated the cellar of an adjoining house.

In the following cases mandatory injunctions were issued to protect easements : *Greenwood* v. *Hownsey*, L. R. 33 Ch. D. 471 ; *Scott* v. *Pope*, L. R. 31 Ch. D. 554, 563, 570 ; *Phillips* v. *Trelby*, 3 Gifford 632, affirmed in 8 Jurist, N. S. 999. The following are cases on injunction between landlord and tenant : *Baugher* v. *Crane*, 27 Md. 39 ; *Maddox* v. *White*, 4 Md. 79.

The following cases hold that the use which the defendants are making of the Calvert street property is tantamount to an eviction of the appellee : *Halligon* v. *Wade*, 21 Ill. Rep. 470 ; *Hodges' case*, 43 N. J. Eq. 343. In *Johnson* v *Glenn*, 40 Md. 200, 207, the Court recognized the right of a lessee to an injunction to restrain the landlord from tearing down the premises, although the term only had one year to run, but refused it because the lessee had not charged he had complied with the terms of his lease.

In *Durell* v. *Pritchard*, L. R. 10 Ch. D. App. Cas. 244, the Court says : " There is no rule which prevents a mandatory injunction being issued where the injury sought to be re-

strained has been completed before filing the bill, and there is no difference in this respect between easements and other rights." In *Krehl* v. *Burrell*, L. R. 7 Ch. D. 551, affirmed by Court of Appeals in 11 Ch. D. 146, the Court compelled a man to pull down his house, although the value of the same was unmeasurably greater than the injury done by its erection. *Daniel* v. *Ferguson*, L. R. 2 Ch. 27.

Where a person, having notice that an injunction is about to issue, goes on with the act complained of he will be compelled to undo what he has done even before the case is heard on its merits. Specific performance of a contract shall not be refused on the mere ground of an adequate remedy in damages. Code, Art. 16, sec. 199.

4. The damages recoverable in equity are such sums as the owner would sustain if the trespass were permenently continued, whereas, at law, it would require numerous suits to determine this, and to prevent a multiplicity of suits the jurisdiction of equity attaches. *Putzel* v. *D. and M. Bank*, 78 Md. 362 ; *Central Trust Co.* v. *Arctic Ice Co.*, 77 Md. 239 ; *Equitable Life Ass. Soc.* v. *Bremen*, 30 Abbots, N. C. 260, 277 ; *Frank* v. *Benesch*, 74 Md. 58 ; 2 *Beach Eq.*, sec. 727. The appellee is entitled to damages for the erection of the smokepipe in the hallway on the seventh floor, for the damages it has suffered to its business, and for the decreased rental value of its premises, caused by the obstructions and the business of the defendent, the Maryland Hotel Company.

SCHMUCKER, J., delivered the opinion of the Court:

The Evening News Publishing Company in 1897 owned an L shaped seven-story building in Baltimore City. One wing of the building was located at the southeast corner of Baltimore and Grant streets, and ran south on Grant street. The other wing extended from the south end of the one already mentioned, easterly to Calvert street, and was commonly known as No. 4 South Calvert street. The entire building was subsequently sold to the Evening News Building Company, but it will be sufficient for the purposes of this opinion to designate its owner as the News Company.

There were two elevators in the building. One was located at or near the middle of the south wall of No. 4 Calvert street, and could be entered from a passage extending east along the wall to the Calvert street entrance of the building. In this passage there was a stairway which was continued up to the seventh floor. Along the side of this stairway the passage to the elevator was about two and a half feet wide, but at the front door of the building it was six feet wide. The other elevator was placed near the junction of the two wings of the building and connected by passageways with both Baltimore and Grant streets. There was also a stairway in the Baltimore street wing of the building, extending to the seventh floor.

The News Company occupied the Baltimore street wing of the building for its own purposes, and rented the several floors of the Calvert street wing to various tenants, who currently used the elevator and stairway therein situated in common. On June 16th, 1897, the News Company leased to the appellee for the term of five years, from September 7th, 1897, certain rooms constituting the greater portion of the seventh or top floor of No. 4 Calvert street, "with elevator service," at an annual rent of $550, with privilege of renewal unless terminated by notice as provided in the lease. The use to which the demised floor could be applied was restricted by the lease to "a photo engraving business," and the lessee was prohibited from assigning the term without the written assent of the lessor. There was no mention of stairways in the lease, nor did it designate by which elevator the elevator service stipulated for was to be rendered. The leased premises were accessible by both of the elevators and stairways, but were more conveniently reached by the elevator and stairway located in No. 4 Calvert street, which were currently used by the lessee until the making of the repairs hereinafter mentioned.

On December 1st, 1898, the News Company leased for twelve years at a rent of $6,500 *per annum* to the appellant Callaghan, for the purpose of a hotel and restaurant, the

whole of No. 4 Calvert street, " subject to the existing lease of the seventh floor to the Baltimore Engraving Company for a term of five years," from September 1st, 1897.  Callaghan's lease from the News Company required him to keep the elevator in that part of the building in good order, and to supply to the Engraving Company, so long as it continued to occupy the seventh floor, the elevator service stipulated for in its lease.   He covenanted in his lease to commence imme- diately and to complete within four months, the conversion of the portion of the building leased to him into a first class hotel and restaurant, and he made the change in the building called for by his covenant at a cost to him of over $30,000.

Before Callaghan began the alterations in the building, the president of the appellee called upon him and suggested the undesirability to a hotel of having the photo engraving busi- ness carried on over its head.   This interview resulted in ne- gotiations between them for the purchase by Callaghan of the unexpired portion of the appellee's lease of the seventh floor. The negotiations continued for about a month, during which time the alterations in the building were actively carried on, and early in February the parties had so nearly come to terms that an agreement was drawn by counsel for the assignment of the unexpired term to Callaghan, but the scheme finally fell through.   During the making of the alterations the appellee was much incommoded by the dirt and disorder in the lower floors of the building, and was, for sometime, while the eleva- tor in its part of the building was being repaired, compelled to use the other elevator and the stairway in the News portion of the building at some inconvenience to its officers, employees and patrons, and it suffered some loss of business therefrom. The evidence is very conflicting as to the nature and extent of the complaint or objection made by the appellee to the appel- lants or either of them in reference to the inconvenience or dam- age caused to it by the alterations while they were being made, but it appears that on January 27th, 1899, the appellee,s at- torney wrote to Callaghan that it had suffered material dam- age from the manner in which the building was being im-

proved, and that it was advised that its rights could be "enforced by injunction," but it "was unwilling to engage in litigation unless as the last means of. protecting its rights." Callaghan did not reply to the letter, and the appellant did not then resort to litigation.

When the alterations of No. 4 Calvert street were completed, the lower stories of the building were greatly improved and beautified, but the access to the elevator in that building by means of the passageway on the first floor was cut off, although the elevator could be reached either by going through the cafe in which were situated the bar and lunch counter, or through the reading room in the front of No. 6 Calvert street, or through the area on the north side of No. 4 Calvert street. These new approaches to the elevator were, with the exception of the one through the cafe or bar-room of the hotel, not so direct nor in some respects so convenient as the former one through the passageway of the building before its alteration, but they were such as could be used without serious inconvenience. Soon after the completion of the alterations in No. 4 Calvert street, the hotel started business and Callaghan then fastened the door to the stairway between the sixth and seventh floors and thus compelled the appellee, when desiring to use a stairway to resort to the less convenient one in the Baltimore street building. Callaghan in making the alterations had also erected an iron fire escape leading from the top of the building to an area opening into Calvert street, which would have been available to the occupants of the seventh floor as a means of exit in a case of emergency.

At the time the lease to the appellee was made, the other floors of No. 4 Calvert street were occupied by different tenants, and sometime after the appellee began to occupy the premises a directory-board was put up on the wall of the hallway inside of the Calvert street entrance upon which were placed the names and occupations of the several tenants and the portions of the building occupied by them. During the alterations of the building after the lease to Callaghan, this board was torn down and never replaced.

On April 21st, 1899, when the alterations in No. 4 Calvert street· had been practically completed the appellee filed its original bill against Callaghan and the News Building and Publishing Companies, and on November 11th, 1899, by an amended bill it brought in the Maryland Hotel Company as the assignee of Callaghan's lease. ·The two News Companies demurred to the original bill, but their demurrer was overruled, and all of the defendants answered the bills.

The bills of complaint set up title to the seventh floor of No. 4 Calvert street in the appellee under the lease from the News Company of June 16th, 1897, which is filed as one of the plaintiffs exhibits and claimed that under it the appellee was entitled, in addition to elevator service, to use in common with all the tenants of the building the stairs and also the hallway, having its entrance on Calvert street in its original condition which permitted access through it on the first floor to the elevator. The bills recited at length the transactions which we have already mentioned and·asserted that the appellee had been irreparably injured by the removal of the directory board from the hallway and by the changes made in the ·hallway, shutting off access through it, to the elevator on the first. floor and prayed that the defendants might be enjoined from obstructing its access to its leased apartments by means of the stairway leading to the Calvert street entrance, and that they might be compelled by a mandatory injunction to furnish the appellee unobstructed transportation and services on the elevator in the Calvert street building, and also the use of the stairway therein and that they.might also by mandatory injunction be required to restore to its original condition the hallway from the Calvert street entrance to the elevator.

The answers admitted the lease of the seventh floor to the appellee by the News Company, but Callaghan denied that by the terms of the lease the appellee acquired any right to the stairway or to maintain a sign in the hallway of the first floor near the Calvert street entrance. The answers of·all the defendants insisted that the appellee had at all times been furnished with elevator service and had always been permitted to

use one of the two stairways, and that service had been fur-
nished it by the elevator in the Calvert street building during
the entire time, except when it was being repaired.    The an-
swers also denied that the appellee had in fact suffered any
irreparable damage by reason of the matters complained of in
its bill, and Callaghan's answer strongly insisted that to grant
the prayer of the bill would do him irreparable and incalcu-
ble injury as he had expended over $30,000 in altering the
building to adapt it to the uses of the hotel and restaurant
which were being successfully conducted therein.

A large amount of conflicting testimony, covering over three
hundred pages of the record, was taken touching the matters
of which we have already stated the substance.    After the
hearing of the case the Circuit Court passed a decree directing,
among other things, that a mandatory injunction issue requir-
ing the defendant, the Maryland Hotel Company, to provide
within sixty days at its own expense for the use of the appel-
lee its servants and customers " a private entrance and a way
at least four feet wide and of the height of the first floor, and
properly lighted by natural or artificial means, from an entrance
to the said building on South Calvert street to the elevator shaft
which shall be so enclosed," &c., &c., or in default thereof to
restore the hallway on the first floor of the Calvert street build-
ing to its original condition prior to the time of the lease of
that building to Callaghan.    The decree also declared the
appellee to be entitled to an inquiry as to what, if any damages,
were due it from the defendant or either of them for the griev-
ances complained of in the bill.    All of the defendants appealed
from the decree.

The Maryland Hotel Company made an application, which
was denied by the Court, for the modification of some of the
terms of the decree but as we have concluded that the decree
itself must be reversed we deem it unnecessary to notice the
subsequent application.

A careful examination of the voluminous record in this
appeal has brought us to the conclusion that the case was not
a proper one for the interposition of a Court of equity, still

less for the issue of the mandatory injunction authorized by the decree appealed from.

The appellee's rights in or claims upon the premises affected by the decree appealed from must be measured by the terms of its lease of June 16th, 1897. That instrument upon its face gives the appellee no claim whatever upon the lower six floors of the building except such as may be implied from the use of the expression " with elevator service " used in renting the seventh floor. The lease does not specify the elevator by which the service is to be rendered or define the extent or character of the service, nor does it mention or allude to stairways, passageways, directory or signs.

In *Aspdin* v. *Austin*, 5 Ad. & Ellis, 682, LORD DENMAN said : " Where parties have entered into written engagements with express stipulations it is manifestly not desirable to extend them by implications, the presumption is that having expressed some they have expressed all the conditions. * * * It is one thing for the Court to effectuate the intention of the parties to the extent to which they may have even imperfectly expressed themselves, and another to add to the instrument all such covenants as upon a full consideration the Court may deem fitting for completing the intention of the parties but which they either purposely or unintentionally have omitted. The former is but the application of a rule of construction to that which is written ; the latter adds to the obligations by which the parties have bound themselves and is of course quite unauthorized as well as liable to great practical injustice in the application." This Court in *Moyer* v. *Mitchel*, 53 Md. 177, cited with approval these expressions of LORD DENMAN, and we regard them as especially appropriate to the ascertainment of the rights of the appellee under the lease appearing in this record.

Under its lease the appellee could only ask for such service as was consistent with the use in common of the elevators by the tenants of all of the floors through which they passed. Assuming from the location of the two elevators that the one near the centre of the Calvert street building was the one prim-

arily intended to furnish the service called for, the lease is still entirely silent as to the route or means of access to the elevator from Calvert street. No implied covenant arises from the lease, that the subdivision of the ground floor of the building should always remain the same as it was when the lease was made. The News Company having made the lease of the rooms on the seventh floor to the appellee had the undoubted right to lease the other portions of the building to Callaghan and he could adapt them to any lawful use so long as he permitted reasonably convenient access to the elevator by the appellee its servants and patrons.

The fact that the lease to the appellee provides for elevator service, but is entirely silent as to stairways, affords some ground for the presumption that the lessee was intended to use the former and not the latter means of access to and egress from the demised floor, but assuming that the letting implied the right to use a stairway, the record does not show that the appellee was at any time entirely deprived of the use of a stairway although it does show that it was inconvenienced and possibly injured by the fastening of the door to the Calvert street stairway.

As we have already said, the lease contained no provision authorizing the appellee to erect a sign in the hallway of the first floor and the evidence as to the existence of an independent or collateral verbal agreement on that subject is conflicting and unsatisfactory, and we therefore do not think that the removal of the directory board from the hall in the alterations made to the lower part of the house afforded the appellee adequate grounds for equitable relief.

The transactions on the part of the defendants complained of in the bill may have put the appellee to serious inconvenience at times and may have caused it loss for which it has a right of action at law against the defendants or some of them, but those transactions did not amount to a destruction or a serious obstruction of any privilege or easement to which the appellee had a clear right, and therefore they did not constitute injuries for which adequate compensation cannot

be obtained by an action of law.   *Welde* v. *Scotten*, 59 Md. 76; *Whalen* v. *Delashmutt*, 59 Md. 254; *Banks* v. *Busey*, 34 Md. 439.

Furthermore the conduct of Hoblitzel and his son, who are the owners of almost the entire capital stock of the appellee, in approaching Callaghan on the eve of the commencement of the alterations to the building and then negotiating with him for a sale to him of the appellee's unexpired term, for a month or more while the work on the building was in active operation without making any definite or positive objection thereto, would disincline a Court of equity to interfere on its behalf even if the case in other respects afforded proper ground for such interference.

To compel the Hotel Company to tear down and destroy the costly improvements which it made while the appellee thus stood by would operate oppressively upon that company.   It is well settled that the granting or refusing an injunction is always a matter resting in the sound discretion of the Court and it ought not to be granted when it would operate oppressively or unjustly.   *B. & O. R. R.* v. *Strauss*, 37 Md. 241; *Spencer et al.* v. *Falls Turnpike Road*, 70 Md. 139.

In reversing the decree in this case we do not mean to prejudice the right of the appellee to institute or maintain an action at law against the defendants in respect to the matters complained of in the bill in which event the question of the fact and extent of the injury which it claims to have suffered will be open to determination by another tribunal.

The decree appealed from will be reversed with costs, but without prejudice to the right of the appellee to sue at law and the case will be remanded for further proceedings by the Court below under the Act of 1896, ch. 229.

*Decree reversed with costs and case remanded.*

(Decided February 20th, 1901.)