CARRIE DAVIS *v.* J. BRITAIN WINTER, EXECUTOR
[No. 17, April Term, 1935.]

614

*Decided May 3rd, 1935.*

The cause was argued before URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Hartwell M. King* and *Murray MacNabb*, for the appellant.

*J. Britain Winter*, with whom was *Meyer H. Getz* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The appeal in this case challenges the correctness of a decree passed by the Circuit Court for Harford County on October 19th, 1934, dismissing appellant's bill of complaint, the object of which was to enforce an alleged contract made between her and William G. Reid against the estate of the latter. The contract relied upon by the appellant had its inception in a proposition written her by Reid in his lifetime, which appellant alleged she had accepted and fully observed, reading as follows:

"Baltimore, Md. Aug. 10, 1930.
"I do agree and promise that if you Carrie Davis will come with me this time to live and be kind to me (as you always have been) and not leave me, I will buy the house at 2347 Eutaw

Place and make a nice home for us. You can place what household things you have in there and I will buy other things to fill in.

"Owing to my shortness of cash cannot do much more than this except to maintain the upkeep. Nevertheless as I promised you before, I will remember you in my will I will then leave you the said house as your own. If we cannot make a go of it by renting some rooms to help along we surely can sell and make some money out of it. And I of course will buy something else may be a shore as you think that will be good. Nevertheless we will try this home first, and anything I buy will be under the same condition.

"And if you will do all you can to make me comfortable and keep me well so I will live till the time comes for me to get that big money that is coming to me I will also give you for yourself at once the $5,000. cash as I promised.

"Hoping you will accept this offer, I am,
"Wm. G. Reid."

It was further alleged, and is admitted by appellee, that William G. Reid departed this life without having by last will and testament made any provision for appellant, and that he did not at any time give her the $5,000 in cash mentioned in this letter. Testimony was heard by the chancellor in open court, practically all of which was given by witnesses for appellant. A summary of the evidence shows that appellant, who was a nurse, first met Reid in 1925 when he was living on Mosher Street in Baltimore, and some months later he was taken ill and was confined to St. Agnes Hospital for several months, during which period she at times visited him and assisted in caring for him; that in the spring of 1930 he was living at North Gilmor Street and wanted Mrs. Davis to come there and take care of him, but this she could not do, because of the size of the house in which

he was living. He then offered to buy a house or a shore property in which they could live, and after looking over various properties he, in August of the same year, finally purchased No. 2347 Eutaw Place, and Mrs. Davis went there and lived with him; that he had often represented that he had certain money coming to him out of which he would give her $5,000 in cash, and would also by last will and testament devise unto her the Eutaw Place property; that on or about August 10th, 1930, he presented the appellant the paper above referred to and told her his object in so doing was to "put it in black and white"; that Mrs. Davis had at times nursed Mr. Reid before they moved into the Eutaw Place property and continued to live with him and care for him from the time the property was purchased during the early part of August, 1930, until some time in June, 1931, when he removed therefrom, having in May of the same year disposed of the Eutaw Place property for $5,000; that on January 24th, 1931, while he owned the property, an agreement was prepared and signed by himself and Mrs. Davis, by which he permitted her to share the second floor apartment free of rent, while he himself would pay her one-half of all income derived from the third floor apartment, and a further agreement of May 20th, 1931, was made between them whereby she was permitted to share the first floor apartment of the premises free of rent, Reid to pay expenses incident to its upkeep. The agreements last referred to were produced by appellee and identified by some of plaintiff's witnesses during cross-examination, and over objection of plaintiff were admitted in evidence. We find no error in their admission. Counsel for appellee insist their legal effect was to nullify the first agreement between the parties, but with this contention we do not agree. In order so to hold it must appear that these subsequent agreements were made as a substitute for the first contract. They relate only to the terms of appellant's occupancy for the time being of certain parts of the Eutaw Place property free from rent, because from time to time Mr. Reid had

tenants for some of the apartments and found it more convenient for him and appellant to occupy those for which he had no tenants. Since the original agreement simply provided that she was to live in the house without specifying in what part of it, it cannot be said that these agreements constitute a novation. There is in them no inconsistency which suggests the *animus novandi*. *Brantly on Contracts* (2nd Ed.) par. 175; *Anson on Contracts* (American Ed.) par. 353; *A. L. Inst. Restatement, Contracts*, sec. 408.

The chancellor below, in dismissing the bill of complaint, found that the contract in question was too uncertain and indefinite to sustain a decree for specific performance, and that these same objections would stand in the way of any accurate award of a money decree. We agree with this conclusion with respect to the clause in the agreement of August 10th, wherein Mr. Reid promised to give appellant $5,000 when he received "that big money" which was coming to him; but we find no uncertainty or indefiniteness in that part of the agreement wherein he stated: "I do agree and promise that if you Carrie Davis will come with me this time to live and be kind to me (as you always have been) and not leave me, I will buy the house at 2347 Eutaw Place and make a nice home for us. You can place what household things you have in there and I will buy other things to fill in. Owing to my shortness of cash can not do much more than this except to maintain the upkeep. Nevertheless as I promised you before, I will remember you in my. will. I will then leave you the said house as your own." Certainly in these clauses his offer is definite to purchase certain property, and it is also definitely stated that he will leave this property to appellant in his will, provided she went with him, lived with him, and was kind to him. The one clause is vague, indefinite, and uncertain, yet the remainder is specific, and we do not find that the expressions used in the adjudicated cases to the effect that such contracts must be definite and certain in all their terms go so far as to reject a definite provi-

sion such as is here made, simply because of the existence of an additional clause which is meaningless, is no part of the real contract, and may therefore be regarded as surplusage.

But notwithstanding this, do the facts in this case justify enforcing the contract, so breached by appellee's decedent, by the award of a monetary decree, bearing in mind that when the bill of complaint was filed appellant knew that the property at No. 2347 Eutaw Place had previously been disposed of? We have been referred to no decision and know of none in which under such circumstances a money decree has been upheld. In *Williston on Contracts*, vol. 3, sec. 1444, under the heading of "Damages as alternative relief" it is stated: "But if the plaintiff when he files his bill knew or should have known that specific performance was impossible, the plaintiff must by amendment or new proceedings seek relief in an action by law." Also in *Bispham's Principles of Equity* (10th Ed.) p. 755, it is stated: "But damages will not be awarded by a Court of Chancery when a bill for specific performance is exhibited by a vendee with knowledge that the specific relief has been rendered impossible by a conveyance of the land sold to an innocent purchaser." See also 25 *R. C. L.* pp. 245 and 248; 58 *Corpus Juris*, p. 1252, par. 604; *Ward v. Newbold*, 115 Md. 689, 81 A. 793, 795.

In the case last cited, the late Judge Pearce, speaking for this court, said: "In 26 *Amer. and Eng. Encyc.* 39, it is said a court of chancery will not decree specific performance of an agreement to convey property which has no existence. This statement of the law would scarcely seem to require the support of adjudged cases, but it was so held in *Kennedy v. Hazelton*, 128 U. S. 667, 9 S. Ct. 202, 32 L. Ed. 576, where ample authorities are cited for the statement. Mr. Justice Gray said: 'A court of chancery cannot decree specific performance of an agreement to convey property which has no existence, or to which the defendant has no title, * * * and if it appears by the bill, or otherwise, that the want of title (even if

caused by the defendant's own act, as by his conveyance to a *bona fide* purchaser) was known to the plaintiff at the time of beginning the suit, the bill will not be retained for the assessment of damages, but must be dismissed, and the plaintiff left to his remedy at law.' "

To adopt a different view would be equivalent to permitting a plaintiff to seek relief in a court of equity for breach of contract for the sole purpose of having damages assessed, a function primarily vested in a court of law.

It therefore follows that, since appellant's remedy for breach of contract in question lies in an action at law, the decree appealed from was correct.

*Decree affirmed, with costs to appellee.*