CARRIE DAVIS *v.* J. BRITAIN WINTER, Executor
[No. 44, January Term, 1937.]

342

*Decided April 30th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Malcolm J. Coan,* with whom were *Hartwell M. King* and *Murray MacNabb* on the brief, for the appellant.

*Harry E. Silverwood,* with whom was *J. Britain Winter* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal is taken from the judgment of *non pros.*, which was entered after adverse rulings on the pleadings. In order the better to understand the problem presented, the decision of the court in Carrie Davis v. J. Britain Winter, Executor of William G. Reid, 168 Md. 613, 178 A. 604, must be first stated, since this case is a former phase of the subject matter of this appeal.

The bill of complaint was filed by Carrie Davis against J. Britain Winter, executor of William G. Reid, for the specific performance of a contract entered into by the parties on August 10th, 1930. The contract was that, in consideration of services rendered and to be rendered by the plaintiff to the testator, the latter would buy a certain property in Baltimore and make it a nice home, maintain it, and devise it to the plaintiff, as he would anything that he would buy; and further that, if the plaintiff, who was a nurse and was to render the services at the testator's home, would do all she could to make the testator comfortable and keep him well so that he could live until the time came for him "to get that big money that is coming to me," he would also give her at once the sum of $5,000. The testator died without complying with any of his promises, and, before his death, sold and received the money for the property he had agreed to devise to the plaintiff. The chancellor dismissed the bill of complaint on the ground that it was too indefinite to be enforced or to support a money decree for compensation. On appeal it was held that the contract was too indefinite to be valid except in respect of the promise to convey the real estate, and that a decree for specific performance would not be passed nor damages be assessed. The testator had sold to an innocent purchaser the real estate before the testator's death, and the plaintiff knew this when she instituted the suit. In addition, the court held that it was primarily the function of a court of law to determine the damages arising from a breach of contract, and her action was at law.

The plaintiff then brought an action at law on the

contract, declaring solely on the agreement of the testator to devise her certain real estate, which he had failed to do, and claiming for this breach of contract damages in the sum claimed of $10,000. The testator died on August 2nd, 1933, and the action was begun on June 7th, 1935. The question before the court is a narrow one, and is raised by the pleadings in this action on a demurrer by the defendant to the amended replications of the plaintiff.

The adequacy of the defense taken depends upon whether the following facts constitute a bar under sections 109 and 110 of article 93 of the Code. The action in the appeal at bar is to recover unliquidated damages for a breach of contract by the executor's decedent. The plaintiff first instituted the suit mentioned for a specific performance of the contract and general relief and failed because her remedy was at law. The demand of the plaintiff was not put in the form of a claim which was verified by affidavit and passed by the orphans' court against the estate of the testator, and then its payment demanded and refused either with or without the claim being physically presented to the administrator before the suit in equity was begun. Nor was the claim asserted against or exhibited to the executor in any form so that he refused its payment in writing at any time before the equity cause was instituted. After the equity suit was brought and not before, the executor filed, on December 14th, 1933, an answer in which he denied the complainant had any demand on account of the breach of the contract; and again on February 28th, 1934, the executor filed an answer to plaintiff's amended bill of complaint and by this answer repeated the denial of all liability. The bill of complaint was dismissed, and the decree was affirmed on appeal, on the ground that the plaintiff's action was at law on a single promise of the contract, whose other promises were too indefinite to be enforceable.

Beyond nine months after the denial of liability by the answers, but promptly after the dismissal of the bill

of complaint, the action on this record was filed. The questions, therefore, are, first, is an unliquidated claim of damages for a breach of contract such a claim as is contemplated by either section 109 or 110 of article 93 of the Code; and, secondly, if so, is a pleading in a suit in equity or an action at law by which the claim is denied such a dispute of the claim or such a refusal of payment in writing as would mark, within the purview of the statute, the beginning of the nine months within which a suit or action for recovery must be brought.

1. It is settled law that, while a claim need not be physically exhibited, after it has been passed by the orphans' court, to be within section 109 of article 93 of the Code, yet unless the claim is authenticated as required by the statute "it is not in a form entitled to be paid, and therefore when section 108 [section 109 in present Code] provides for the consequences which shall follow the rejection of a claim when exhibited against an administrator, it imports that the claim shall be exhibited in such form as that the administrator may be protected in paying it. The rejection or refusal to pay a claim not authenticated is not such a refusal or rejection as is contemplated by the Code, and imposes no obligation on the creditor to sue thereon within nine months. It stands as if it never had been exhibited." *Bradford v. Street* (1896), 84 Md. 273, 279, 280, 35 A. 886; *Coburn v. Harris,* 53 Md. 367, 372, 373.

It follows that the claim of the plaintiff was not so authenticated as to be within the provisions of section 109 of article 93 of the Code. Nor is a contingent claim, nor an unliquidated demand which has not been passed by the orphans' court, nor one susceptible of the proof, but not proved as prescribed by the statute, such a claim as would be within the scope of section 109. *Coburn v. Harris,* 58 Md. 87, 100; *Orendorff v. Utz,* 48 Md. 298, 304.

2. However, section 110 of article 93 of the Code (Acts 1920, ch. 674) is a later enactment which declares that a claim is barred if not sued upon within nine months after its payment has been rejected by a refusal in writ-

ing of the executor or administrator to pay, no matter in what form the claim is asserted against or exhibited to such personal representative and whether sworn to or passed by the orphans' court. *Baker v. Cooper,* 166 Md. 1, 15, 16, 170 A. 556; *Bogart v. Willis,* 158 Md. 393, 406, 407, 148 A. 585. So, it would seem that every subsisting claim against the decedent's estate is within section 110, if the terms for its inclusion within the operation of the section exist.

The inquiry on the facts admitted by the pleadings on this record is, therefore, whether the requirements for the operation of section 110 have been fulfilled. It must be admitted that the suit in equity may be said to be the assertion of the claim against the executor within the terms of the section. It may further be admitted that the executor's answer was a refusal in writing to pay the claim made by the bill of complaint. The problem for the court is thus reduced to the single question, whether this pleading is such a refusal of payment of the claim in writing as is contemplated by section 110.

In support of the position that the answer is such a refusal, the executor relies upon a statement found in the decision of *Coburn v. Harris,* 58 Md. 87, 100. The language there used must be considered in connection with the circumstances under which the opinion was written. The case related to the present section 109 of article 93, and was rendered in 1882. It could not have been addressed to section 110, because that section was not enacted until the passage of chapter 674 of the Acts of 1920. Furthermore, the two sections differ in their provisions and scope, and chapter 674 for the first time enacted the condition precedent to the section's operation that the personal representative "shall refuse payment thereof [of the claim] in writing."

With these distinctions in mind, the statement of *Coburn v. Harris, supra,* must be read. In that case, the opinion recites that: Thomas Coburn was under contract to build a stone wall which was in course of construction at the time of his death. His administrator undertook to

complete the building of the wall, and became indebted to a materialman for stone used in the making of the wall. Thomas Coburn had died owing money for stone furnished by the same materialman for the wall. An action was brought against the administrator by the materialman for all of the stone. In this action the administrator filed the general issue plea denying the indebtedness. At the trial, the right to recover that part of the claim which was for stone delivered after the intestate's death was abandoned. A judgment was obtained for the stone delivered before intestate's death and a new action was brought for that part of the claim which had been so abandoned. The second suit was defended on the ground that it was not brought within nine months after it had been exhibited to the administrator and was by him rejected. The court held that the defense was not available because it was based upon a contract between the intestate's administrator and the materialman for the sale and delivery of stone after the intestate's death, and so not within the statute. Section 109.

In the course of a discussion of one of the prayers in this case, the court expressed the view that the effect of the general issue plea in the first case amounted to a rejection of the claim by the defendant so as to entitle him to the protection of section 109 as an entire bar because the second suit was not brought within nine months from the defense so made in the first action. This expression of opinion was a *dictum*, as is made clear by this quotation from the opinion: "A more formal demand than by suit could not be made, and a rejection of and refusal to pay could not be more solemnly and formally made than was made by pleas, such as were interposed, denying the plaintiff's claim *in toto;* and if the statute was applicable to such a claim as this is, we think that this prayer of the defendant ought to have been granted. In our opinion, however, the claim sued on in this case is not within the meaning or contemplation of the Code, art. 93, sec. 108 [now section 109]."

The *dictum* quoted does not carry such conviction that

it should be extended to the construction of a later enactment, and accepted as sufficient authority to hold that the denial by the executor in his answer of the plaintiff's right to a specific performance and accounting under the contract between her and the decedent is a refusal of payment in writing of the pending action for damages growing out of the decedent's breach of contract within the meaning of section 110.

The object of both sections 109 and 110 was to prevent a creditor with a controverted claim from unduly prolonging the settlement of a decedent's estate. It was not directed to those claims which were in litigation at law or in equity between the claimant and the personal representative of the decedent, but to those claims which were rejected or disputed and on which the creditor had not brought suit. So, it is obvious that the provision which enabled a personal representative to fix, by a written refusal delivered to the creditor, the period of nine months from such rejection within which action or suit must be brought by the creditor under the penalty of his claim becoming forever barred, did not include the denials in the pleadings filed by the personal representative in a suit in which the claim was already in course of litigation. The refusal in writing contemplated by section 110 is a refusal before, and not after, a suit is brought on the claim in dispute. Construction would introduce an anomaly in the clear meaning of section 110 if it should apply its terms to a pending suit at law or in equity, and by a pleading in that proceeding designate the day of the filing as the time from which the claimant must compute the nine months' period in which he must bring his suit. If such were the meaning of the section and the effect of the defendant's pleading, the plaintiff would have to abandon the pending suit and begin another, or otherwise he would not "bring suit upon the same (i. e. his claim) within nine months after such rejection" (which would be here the answer pleaded) and so his claim would be barred by the language of the section. See *Maryland Casualty Co. v.*

*State*, 137 Md. 144, 154, 111 A. 825; *Zollickoffer v. Seth*, 44 Md. 359, 370. The court cannot adopt the construction asked by the defendant. This conclusion is in harmony with the action of the court in *Hamilton v. Thirston* (1901), 93 Md. 213, 48 A. 709, and *Davis v. Winter*, 168 Md. 613, 178 A. 604. In both of these cases,—one at law before the enactment of section 110, but when section 109 was in force, and the second in equity— the court indicated the remedy by the party was in another form of action or at law, although, in each of these cases, the plaintiff's claim was barred at the writing of the opinion, if a pleading in the course of a current lawsuit were to be accepted as the beginning of the nine months' period of limitations in the event the new action were begun. See *Hamilton v. Thirston*, 94 Md. 253, 51 A. 42.

The rulings of the court at *nisi prius* were not in accord with the views here expressed, and the judgment will be reversed for further proceedings in accordance with this opinion.

> *Judgment reversed, with costs to the appellant, and new trial awarded.*

BOND, C. J., filed a dissenting opinion as follows, in which SHEHAN, J., concurred.

The trial court's ruling seems to me to have been too well supported to be reversed as erroneous, for it was in conformity with the opinion of this court expressed in *Coburn v. Harris*, 58 Md. 87, and with the general rule governing application of limitations to second suits after dismissal, nonsuit, or abatement of previous suits. *Wood, Limitations*, sec. 293; *Willard v. Wood*, 164 U. S. 502, 523, 17 S. Ct. 176, 41 L. Ed. 531; *Alexander v. Pendleton*, 8 Cranch 462, 470, 3 L. Ed. 624; *Tracy v. Queen City Fire Ins. Co.*, 132 La. 610, 61 So. 687. It would be better, on an affirmance of a dismissal for want of jurisdiction on one side of the court, to remand the case in order to afford opportunity for a transfer of it, un-

interrupted, under article 75, sec. 124, of the Code. *Martin Fertilizer Co. v. Thomas & Co.,* 135 Md. 633, 109 A. 458; *Maryland Hotel Co. v. Baltimore Engraving Co.,* 92 Md. 710, 725, 48 A. 716.