(No. 20744.—

FRED H. LaRocque *et al.* Exrs., *vs.* THOMAS MARTIN *et al.*—(FRED BESSE *et al.* Appellants, *vs.* LILLIE BISHOP, Appellee.)

*Opinion filed June 18, 1931.*

HUNTER & MINOR, for appellants.

HARRY S. STREETER, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

Celestin J. Boisvert, a resident of Kankakee county, died testate on May 8, 1930, and his will was duly probated in the county court of that county. Letters testamentary were issued to Fred H. LaRocque and William Martin, who qualified as executors. The third and eighth clauses of the will were as follows:

"*Third*—I give, devise and bequeath to Mrs. Clarence Bishop the following property: Lot No. 11 and 30 feet south lot 12 in block 7 original town of Manteno and the house that is built on these lots, provided that she takes care of me till I die, and provided also, that she and her husband do not make any claim against my estate."

"*Eighth*—After the payment of these sums of money and shares of stock and property hereabove mentioned, I order and direct my executors hereafter named to sell all my other properties and to divide the balance of my estate between all my nephews and nieces including the widow of Arcade Besse and also all those whose names appear here above. All should receive share and share alike."

The executors filed a bill in chancery in the circuit court alleging an ambiguity in these clauses of the will and praying for their construction, and Boisvert's heirs and devisees were made parties defendant. An answer was filed by Lillie Bishop, (the Mrs. Clarence Bishop named in the will,) who claimed title in fee, by virtue of the will, in the property described in the third clause. Appellants filed answers, alleging that Mrs. Bishop was not entitled to the devise for the reason that she did not take care of deceased

before his death but that his care and maintenance were paid for by his agent out of his property, and that the devise to Mrs. Bishop should fall into the residuum of the estate and be distributed in accordance with the eighth clause of the will. The cause was heard by the court and a decree entered finding that the gift to Mrs. Bishop under the third clause was upon the condition that she take care of Boisvert until his death and the condition that neither she nor her husband should make any claim against Boisvert's estate; that the conditions were complied with, and that Mrs. Bishop was therefore entitled to the real estate as her absolute property. From this decree Fred Besse and others have appealed to this court.

Testator was a bachelor and owned two lots in the village of Manteno, upon one of which was a house, barn, chicken house, etc. He had not been engaged in any business for some years before his death. Mrs. Bishop, her husband and son lived in the house with him for eight or nine years. As to what the arrangement between them was there is not much competent evidence, but it does appear that he owned the premises in which they lived and that there were some chickens belonging to him. He paid for the coal, worked in the garden and took care of the chickens. Mrs. Bishop was the housekeeper. Up to June 25, 1929, testator did some work on the premises, but on that date he was stricken with paralysis and from that time was unable to care for himself properly. Mrs. Bishop took care of him from June 25 to July 9, when a trained nurse was employed, who remained with him until his death, May 8, 1930. The will was made on the 21st day of August, 1929. Mrs. Bishop bought some supplies for testator, boarded the nurse, did the laundry work and assisted the nurse in taking care of testator. The forepart of November he had a second stroke and became helpless. In January, 1930, Fred LaRocque was appointed attorney in fact for testator. After this appointment Mrs. Bishop presented to

LaRocque bills for boarding the nurse, for laundry, supplies and her services in assisting the nurse, amounting in all to $1083. LaRocque did not consult testator about these bills and it does not appear that testator knew anything about them. LaRocque consulted an attorney and then paid Mrs. Bishop the full amount of the bills. The first bill she presented ($845) was on March 13, 1930, the last bill presented was on April 1, 1930. Testator during his sickness had in the bank from $4000 to $5000. The evidence of the doctor and nurse shows that after his stroke testator was very untidy, and his bedding and clothing had to be changed three or four times a day and often three or four times in the night and were washed by Mrs. Bishop. In addition to the paralysis he had trouble with his stomach and did not have control of his kidneys and bowels. He also had a cancerous growth in his nose, which discharged continually. If Mrs. Bishop had not assisted the nurse in caring for him someone else would have had to be employed.

In construing a will the first object to be attained is to ascertain, if possible, the intention of the testator, and this must be determined from the language used in the instrument, and the court may consider the circumstances surrounding the maker of the will at the time it was made, as shown by extrinsic evidence, so that the court may place itself in the position of the maker and glean from the language used in the instrument the intention of the maker in using such language. (*Austin* v. *First Trust and Savings Bank,* 343 Ill. 406.) The testator's intention must be determined by the language he used in the will and not from any surmise that he used the language to express an intention or meaning he had in his mind but failed to express. If he has overlooked a condition which he would perhaps have provided for if it had occurred to him, the court can not guess which provision he would probably have made and by construction read it into his will on the presumption that he would naturally have made such a provision if

he had thought of it. *Foss* v. *State Bank and Trust Co.* 343 Ill. 94.

Whether there has been a performance or breach of a condition precedent or a condition subsequent depends upon a construction of the condition, and a reasonable construction is to be given to such condition in favor of the beneficiary and against a forfeiture, and such construction is dependent upon the circumstances of each particular case. (40 Cyc. 1717.) Mrs. Bishop was not of kin to the testator, and the circumstances of their living under the same roof are not such as would raise a presumption that the services rendered by each for the other were to be gratis but were such that an implied contract for compensation would be presumed therefrom. There is no express contract shown by the evidence by reason of which Mrs. Bishop was obligated to take care of the testator, and there is nothing in the evidence tending to show that at the time the will was made he contemplated that the extraordinary services rendered by her in caring for him would be necessary, but, on the contrary, the natural inference would be that by the use of the words "takes care of me till I die" he had in mind the ordinary care and attention that he had theretofore been receiving as a member of the household. This care he received from her until his death and no claim for compensation therefor was made by her or her husband against his estate, and in her answer to the bill she disclaims any intention of making such claim. The evidence shows a literal compliance on the part of Mrs. Bishop with the provisos in the third clause of the will, and the court rightly decreed that she was entitled to the real estate as her absolute property.

The decree of the circuit court is affirmed.

*Decree affirmed.*