## BRANDENBURG ET AL. *v.* HARSHMAN

[No. 147, October Term, 1948.]

*Decided April 29, 1949.*

The cause was argued before MARBURY, C. J., and DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Robert E. Clapp, Jr.,* and *W. LeRoy Ortel,* for appellants.

*Sherman P. Bowers* and *H. Kieffer DeLauter,* for appellee.

MARBURY, C. J., delivered the opinion of the Court.

In 1931, the husband of the appellee died, leaving her a widow with two children, a married daughter, Lera Zimmerman, who lived in Baltimore, and a son, Harold Harshman, who at that time was employed by Montgomery Ward in Baltimore. The appellee received through the will of her husband all of his property, consisting of the family home in Walkersville, Frederick County, 120 shares of Walkersville Water Company stock, some household furnishings and other personal property. Mrs. Harshman continued living in the house in Walkersville after her husband's death, until 1940. In 1931 or 1932, she suffered a paralytic stroke. She rented a second floor apartment in the home, and was periodically visited by her two children. In the year 1939, Mrs. Harshman conveyed to her daughter, in consideration of love and affection, the Walkersville property, continuing, however, to live in it until the spring of 1940, when she sold her personal property, and moved to Baltimore to live with her daughter and the latter's family. At that time she was 75 years of age, according to the testi-

mony of her son. The daughter, Mrs. Zimmerman, then rented the property until 1942, when she sold it to Harry M. Staley and his wife, who gave a purchase money mortgage for the full purchase price of $10,000. It is agreed that this was a fair price for the property. The mortgage was paid just prior to the institution of the current proceedings, and the $10,000 has been paid into court where it has been agreed that it shall be substituted for the property. On April 27, 1942, Mrs. Harshman transferred the 120 shares of stock of the Walkersville Water Company to her daughter, Mrs. Zimmerman. On September 27, 1945, Mrs. Zimmerman died. Her husband waived all his interest in her estate, and her daughter, Miriam A. Brandenburg, administered on her mother's estate in the Orphans Court of Baltimore City. The purchase money mortgage of $10,000 and the 120 shares of Walkersville Water Company stock were distributed to Mrs. Brandenburg in that Court. Mrs. Brandenburg had previously been employed, but after the death of her mother, she gave up her employment and took care of her grandmother until 1947, when she had a child. Then, because of her own poor state of health, the care needed by her child and the care needed by her father who lived with her and was ill, she advised her uncle, Harold Harshman, that she could no longer look after her grandmother, and that he would have to take care of her. On September 10, 1947, Mrs. Harshman was removed to the home of Harold Harshman, and on October 18, 1947, the bill of complaint in this case was filed in the Circuit Court for Frederick County, in the name of Mrs. Harshman against Mrs. Brandenburg, administratrix of the estate of her mother, and individually, her husband Merhl Brandenburg, her father, Walter C. Zimmerman, the husband of Mrs. Lera Zimmerman, and Harry M. Staley and Virgie I. Staley, the purchasers of the Walkersville property. The bill asked that the deed of the home place to Mrs. Zimmerman be set aside, that the deed from Mrs. Zimmerman to the Staleys and the purchase money mortgage given by the Staleys be de-

clared null and void, that the transfer of securities from the complainant to Mrs. Zimmerman be declared null and void, and, by an amendment to the bill, it was asked in the alternative that if the transfer of the home place and securities be allowed to stand, the Court should consider the home place and the securities as impressed with a trust in favor of the complainant. The Chancellor found that there had existed a confidential relationship between Mrs. Harshman and her daughter, Lera, and that the defendants had not met the burden of proof, thereby imposed upon them. He, therefore, signed a decree holding that the $10,000 in the custody of the Clerk of the Court was the property of the appellee, and that the Water Company stock was also her property. The latter was directed to be transferred to the Clerk of the Court for the account of the appellee, and the Clerk was directed to deduct the costs from the funds in his hands and to pay the balance to Mrs. Harshman. The bill as to the Staleys was dismissed. From this decree an appeal was taken here by Mrs. Brandenburg as administratrix and individually, by her husband, and by her father.

Mrs. Harshman, who is now 85 year of age, testified she was not able to remember that the notary public came to her house in 1939 to acknowledge any deed. She was prohibited by Code, Article 35, Section 3 (the Evidence Article), from testifying as to any transaction she had with her daughter, and counsel for the appellants made appropriate and timely objection to her giving any such testimony. From the reading of her testimony, it is doubtful if she could have given much evidence of value on this point, as she did not remember the execution of the deed. She did, however, testify that she had very little education, never had any business transactions, and that when she was executrix of her husband's estate, her daughter, Lera, assisted her in looking after it. She also said that Lera always wanted her to come down and live with her. She said that Lera's husband, Walter, told her she got a good price for the home, (she said she

wanted $12,000 for it). Mr. Stauffer, the notary public, who took her acknowledgement to the deed for the home place, testified that he was called down to take an acknowledgment for Mrs. Harshman, that when he arrived there he saw her and Lera, that Mrs. Harshman signed her name to a paper; and that he took her acknowledgment. He did not remember what the paper was, but there was only one. He thought at that time she was a very old lady, but he was only there about 10 or 15 minutes. He said she talked sensibly and she was capable of signing her name. There is practically nothing in the evidence about the transfer of the Water Company stock, except that it was transferred through Baker Watts & Company in Baltimore. There is evidence that Harold Harshman, the son of the appellant, had obtained money from time to time from his father, and also from his mother and sister, and that this amounted to possibly as much as the property given to Mrs. Zimmerman. There is also some testimony that the son was not successful financially and had a bad record in some respects, but we do not think it necessary to discuss this in detail.

We have held in a number of cases, among them some quite recent ones, that while a transfer of property from a parent to a child is generally considered a gift, this is not the case where, by reason of circumstances and conditions, the child is the dominant party. In the case of *Hoffman v. Rickell,* 191 Md. 591, 598, 62 A. 2d 597, 599, this question was discussed and it was stated, quoting from *Mead v. Gilbert,* 170 Md. 592, 185 A. 668, that "where a conveyance from a parent to a child is attacked, the existence of a confidential relationship between the parties is a fact to be shown * * * and that in such an inquiry advanced age, physical debility, and mental feebleness are all facts, no one of which is necessarily conclusive, but any one of which may have weight in determining whether the relationship as a fact existed." In the *Hoffman v. Rickell* case, a number of the earlier cases are discussed, and it is unnecessary now to reiterate what we have previously said on the subject.

In the case before us the evidence shows that the appellee was about 75 years of age when she made the deed, was three years older when she transferred the Water Company stock, and she had previously had a stroke which enfeebled her physically. She had little education, and relied upon her daughter, Mrs. Zimmerman, to help her in the various matters connected with her husband's estate. It does not appear from the record who drew the deed, although it was obviously drawn by a lawyer. The lawyer who was supposed to have drawn it was not called as a witness either by the appellee or by the appellants. It is not shown who employed him, nor whether he gave the appellee any independent advice about her proposed action in stripping herself of the larger part of her property. At the time of the execution of the deed, the daughter was present in the house, and the notary testified that he thought she paid him his fee. In view of all these circumstances we think that there is sufficient evidence to justify the conclusion reached by the Chancellor that a confidential relationship existed between the mother and the daughter at the time of the two transactions.

Once a confidential relationship is established, the burden rests upon the recipient of property to show that the arrangement made was equitable and just. To support that burden it is not necessary always to show by direct testimony why the conveyances were made. Sometimes there is so little direct evidence available that it becomes necessary, as we said in *Bass v. Smith,* 189 Md. 461, 56 A. 2d 800, to reason backwards, and decide, from the circumstances shown, what the parties intended by the conveyances. In this case the appellee apparently stripped herself of practically all of her property by giving it during her lifetime to her daughter. There is nothing to show that the daughter was not devoted to her mother, and, apparently after her father's death, she constantly urged her mother to come to live with her. This she finally did. From the actions of the parties and in the absence of any complaint by the mother during

her daughter's lifetime, and for two years thereafter, until it became impossible for the granddaughter to take care of her, it appears that everyone was satisfied with the arrangement. There is nothing to prevent a parent from giving to one child all of the property she has, if she is devoted to that child, and expects that child to take care of her during the rest of her life. That is especially true when the other child is improvident, and has gotten already an amount of money from his parents, possibly equal to the amount that remains. In the case before us, from all the evidence, we have come to the conclusion that Mrs. Harshman wished the daughter to have all of her property, and in return, the daughter intended to take care of her as long as she lived. Even if there was no definite bargain to that effect, we think such an understanding can be inferred from the action of both parties. The mother transferred her property to the daughter, and the daughter took care of the mother just as if some definite written agreement had been made to that effect. Under the circumstances we cannot say that it was an unfair or unreasonable arrangement.

After the death of the daughter, the granddaughter carried out the actual or implied arrangement to take care of the appellee, until such time as it became impossible for her to do it. When it became impossible, then a new situation arose. We do not think it would be just or equitable to strike down the transfers of the real estate and the stock and turn the proceeds back to the mother. According to the testimony, she is not capable of taking care of herself, but irrespective of that, it would not be fair to the granddaughter, the legatee of the daughter, to disregard entirely the care already given to the appellee, and to require her to return the property which was turned over to the daughter presumably in exchange for that care. *Long v. Huseman,* 186 Md. 495, 47 A. 2d 75. On the other hand, since the granddaughter can no longer give the appellee that care, it would not be just to the latter to let the transactions stand, and leave her without further benefit from the implied or active

agreement made. We think the properties are impressed with a trust to the end that the agreement of the parties may be carried out, so far as possible. We will direct the appointment, by the Court, of a trustee, to receive, hold and invest the proceeds of the mortgage now in the custody of the Clerk, less court costs, and also the Water Company stock, and to use the income therefrom, and the principal, if necessary, under the direction of the Court, for the care of the appellee during the remaining years of her life. After her death the trust estate, or what remains of it, will become the absolute property of the appellant, Mrs. Brandenburg. This solution is approved, (and indeed suggested) by the appellants.

The result will be of benefit to the appellee, although not all she asked for.

The decree will, therefore, be reversed and the case remanded for the passage of a decree in accordance with this opinion. The costs above and below are to be paid out of the fund in the custody of the Clerk.

*Decree reversed and remanded. Costs above and below to be paid out of the funds in the custody of the Clerk.*