NOWELL, Administrator, et al. *v.*
LARRIMORE et al.
LARRIMORE *v.* COHEN
(Two Appeals In One Record)
[No. 37, October Term, 1954.]

*Decided December 14, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Linwood S. Clark,* for appellants.

*Thomas J. Curley,* with whom was *George B. Woelfel,* on the brief, for appellee, Nannie B. Larrimore.

**616**

*James C. Morton, Jr.,* with whom were *Rouse and Morton,* on the brief, for appellees, Joseph G. Cohen and Minnie Cohen.

COLLINS, J., delivered the opinion of the Court.

Here are appeals from two decrees affecting two lots of land in Anne Arundel County. The two cases were consolidated and heard together in open court before the chancellor.

In the first case the appellants, Elmer Ellsworth Nowell, Administrator, D. B. N. C. T. A. of the Estate of James R. Larrimore, deceased, and James F. Larrimore, on April 1, 1952, filed their third amended bill of complaint against the appellees, Nannie B. Larrimore and Joseph G. Cohen and Minnie Cohen, his wife, praying that Lot No. 3 in a Subdivision of Larrimore's Point be impressed with a trust for the support of James R. Larrimore at a reasonable charge while a patient at the Homewood Convalescing Home, (the Home), operated by the aforesaid Joseph G. Cohen and Minnie Cohen, from November 15, 1950, to April 13, 1951, and for other and further relief. After a hearing in open court before the chancellor, the bill of complaint was dismissed by decree. From that decree appellants appeal. In the second case James F. Larrimore, appellant, filed a bill of complaint on February 14, 1953, against Joseph C. Cohen and Minnie Cohen, appellees, asking that the deed of November 29, 1950, to Lot No. 5 of the Subdivision of Larrimore's Point, from James R. Larrimore to them, while in the Home, be decreed to be in the nature of a mortgage to secure the reasonable cost of James R. Larrimore's support and care by the Cohens; that said claim for support be forever barred and nonenforceable; that the plaintiff as devisee be decree to have ownership of Lot No. 5; and for other and further relief.

Previously, on December 11, 1952, the appellants here had filed an amended bill of complaint against Mr. and Mrs. Cohen wherein they sought to have the deed made by James R. Larrimore, hereinafter referred to as Mr.

Larrimore, to the Cohens on November 29, 1950, stricken down on the ground that Mr. Larrimore was, at the time he executed said deed, incompetent to execute a valid deed or contract. On January 23, 1953, a decree was filed dismissing the bill in that case, and no appeal was taken from that decree.

The facts in the first case are in part as follows. The deceased, Mr. Larrimore, owned and lived on a nine acre tract of land at Larrimore's Point on Glebe Creek in Anne Arundel County. In May of 1934 this land was surveyed and sub-divided into six lots, the plat being recorded. The home which he occupied was on Lot No. 3. On June 7, 1934, he conveyed Lot No. 1 to his son, Edward W. Larrimore and Alma Larrimore, his wife; and Lots No. 2 and 6 to his son, Walter E. Larrimore and Nannie B. Larrimore, his wife. Mr. Larrimore's wife died March 31, 1935. Before that date Walter had erected a home on Lot No. 2. After his wife's death, Mr. Larrimore continued to live in his home on Lot No. 3, but took his meals at the home of his son, Walter, except when his daughter, Anna Marie Denzler, who lived in Delaware, came to visit him in the summers, and except for the two winters when Edward and his wife, Alma, lived with him. The visits of Marie ceased about 1941.

Mr. Larrimore, with his sons, William and Walter, and their wives, on January 28, 1946, went to the office of the late Arthur Trader, an attorney in Annapolis, and executed deeds of Lot No. 4 to William and his wife, Mabel, and Lot No. 3, Mr. Larrimore's home property, to Walter and his wife, Nannie. On the same date he executed a will bequeathing to his daughter, Anna Marie Denzler, the sum of $10.00; devising to his son, James F. Larrimore, Lot No. 5; leaving any personal estate to be equally divided among his children; and naming his son, Walter, as executor. At the time of the conveyance of Lot No. 3, Mr. Larrimore's house was in very bad condition. After Walter rebuilt it, he and his family moved in with his father and Walter rented his house. Walter died on April 8, 1948, and his wife,

Nannie, with her son, Walter Garrett Larrimore, his wife, their two small children, and Nannie's aunt, continued to live in Mr. Larrimore's home. On April 1, 1952, the third amended bill of complaint as aforesaid was filed, Mr. Larrimore having died on April 13, 1951. In the said bill it was alleged that on January 12, 1951, a letter was mailed by the State's Attorney of Anne Arundel County to the attorney for James F. Larrimore informing him that the Home, operated by Mr. and Mrs. Cohen, was pressing him to prosecute the children of Mr. Larrimore for failure to support their father and pay for his nursing and medicines which at that time amounted to $428.00.

Mabel Larrimore, the wife of William, testified that she was in the office of Mr. Trader on January 28, 1946, when the deeds were signed. She said the next week she and her husband went to see Walter and in the presence of Nannie, his wife, Walter told her and her husband that he knew they had been surprised, that his father had given him the home place in consideration of the fact that Walter and Nannie were going to repair it, that his father was going to live with him, and that they were going to take care of his father for the rest of his life. William Larrimore testified that Walter and his wife said they had told Mr. Larrimore that, if he would give them the home place, they would fix it up, would take care of him, and make a home for him, as long as he lived. He further testified that Nannie said she had told her father-in-law that she loved him and the only reason she wanted the house was to move there and take care of him. Edward Larrimore testified that at one time he asked his father why he deeded Lot No. 3 to Walter and his wife. His father told him that Nannie and Walter would take care of him the balance of his life, and that his father wept and said he knew he had done the wrong thing.

Nannie B. Larrimore, one of the defendants and appellees here, testified that Mr. Larrimore was very ill in 1944 with bronchial pneumonia and worked very

little from that time on. She took him to her home and kept him from the first of January, 1944, until the first of April that year, nursing him night and day, and from that time on he was not able to make enough money to support himself. He never gave her any money because he had none. He deeded the property to her and her husband in 1946. He told Walter that he wanted him to have the home as he was no longer able to keep it up and pay the taxes. They made no promises whatsoever. Her husband had been waiting on his father for the past thirteen years, even washing for him. During that time Mr. Larrimore ate three meals a day at her home. She said they intended to rebuild Mr. Larrimore's home and that he was to live with them but no agreement was made to take care of him. She and her husband spent about $15,000.00 in repairing Mr. Larrimore's home in addition to the labor of her husband and son. In 1944 the house leaked to such an extent that she was required to move Mr. Larrimore's bed from place to place to keep him dry. At that time she had to furnish him with bed clothes. There was no promise made that they would support and take care of him the rest of his life. She said she did not make the statement testified to by Mabel, that she may have said that her father-in-law was to live with them but nothing was said about taking care of him. At one stage of the cross-examination she admitted that she promised to live in the home with Mr. Larrimore and care for him, but denied that "it was for the rest of his life". She further testified, when asked about the statement which William had made, that they intended to move to Mr. Larrimore's house and give him a home but that she was not able to take care of him. He needed medical care which she could not give. After the death of her husband in 1948, her son, who was attending law school and also working, and the son's wife who was also working, provided the money for the home. In addition she received $75.00 a month rent for their former home. In 1949 she became very ill, was confined to her bed, and had to take care of Mr. Larri-

more and her two infant grandchildren. Her aunt had to stay home from work to take care of her. At that time, on the advice of Dr. Basil, she put her father-in-law, then about eighty-eight years of age, in the Home for the period of about one month. She asked William to help with his expenses and William paid $42.00 for one week's care and said that was all he was going to pay unless the others would pay something. Mr. Larrimore cried and said he thought it was proper for his other sons to do something for him, to pay his hospital bills, and he was sorry he had not given the entire property to her and her husband. On November 15, 1950, the condition of her father-in-law became such that she could not go in his room and had to hire a woman to clean him. She solicited the sons for help but received nothing. On orders from Dr. Basil, she called an ambulance. She had previously talked to Mrs. Cohen and told her that her father-in-law had no money but had a piece of property which he had offered to her and which she would not accept. She asked Mrs. Cohen if she would take him under those conditions. As a result of that conversation Mr. Larrimore was placed in the Cohen home. He was at that time in a much worse condition than when previously placed there in 1949. Mr. Larrimore remained in the Home about five months and died on April 13, 1951.

Walter Garrett Larrimore, the son of Walter and Nannie, now a member of the Bar, testified that the house on Lot No. 3 was completely run down in 1946 when his father and mother acquired it. They had to tear down the whole house except the chimney, a few floor joists on the second floor, and a little siding on one side. The repairs cost over $15,000.00. He said his grandfather had eaten with them since his grandmother died in 1935 except for the few summers when his Aunt Marie came down to the property and the two winters that his Uncle Edward and Aunt Alma had lived with him. At the time of the hearing this house was mort-

gaged in the amount of $8,000.00. There is no testimony as to the value of the house on Lot No. 3.

Mrs. Newton B. Collinson, a disinterested witness and a former friend of Mr. Larrimore's wife, testified that she heard Mr. Larrimore say he had given the home to Walter and Nannie because Nannie would take care of him.

It is true that we have held in a number of recent cases that while a transfer of property from a parent to a child is generally considered as a gift, this is not the case where by reason of circumstances and conditions the child is the dominant party. Where the parol evidence establishes that such transfer was made under an agreement, the courts will hold that the transfer is subject to a constructive trust and will impress the property with a trust to the end that the agreement of the parties may be carried out so far as possible. *O'Connor v. Estevez,* 182 Md. 541, 35 A. 2d 148; *Grimes v. Grimes,* 184 Md. 59, 40 A. 2d 58; *Rice v. Rice,* 184 Md. 403, 41 A. 2d 371; *Bass v. Smith,* 189 Md. 461, 56 A. 2d 800; *Brandenburg v. Harshman,* 193 Md. 104, 65 A. 2d 906. Assuming, without deciding, that Walter and Nannie Larrimore promised at the time Lot No. 3 was conveyed to them, as Nannie admitted at one time in her cross-examination, to live in the home with Mr. Larrimore and care for him, we are of opinion that this agreement was carried out by Walter and Nannie. The fact that Walter and Nannie gave Mr. Larrimore adequate care while living with them on Lot No. 3 is not disputed here.

The testimony that Walter and Nannie agreed to care for Mr. Larrimore for the rest of his life and that such an obligation required them to pay the costs of his care in the Home is not convincing. Although William and Mabel stated that Walter and Nannie agreed to care for Mr. Larrimore for the rest of his life, this is emphatically denied by Nannie. Furthermore, when Nannie went to them at the time Mr. Larrimore was in the Home for about one month and asked them to help with

his expenses there, William paid $42.00 of this expense and said nothing about the alleged agreement that Nannie should pay this. If, at that time William and Mabel had thought she was under any such contractual obligation, it is reasonable to assume that something would have been said by them about such an obligation. Furthermore, as pointed out by the chancellor, Walter was not an educated man and it is hardly reasonable to assume that he would have used the words "in consideration of", as testified to by Mabel. The most persuasive reason for deciding that Walter and Nannie did not promise to care for Mr. Larrimore for the rest of his life and that such care included paying for his expenses while in the Home is the fact that Mr. Larrimore himself, while in the Home, conveyed to the Cohens his remaining lot in payment for his care there. No one knew better than he the agreement which he had made with Walter and Nannie. He was later determined, judicially, to be competent to execute the deed. If he thought that such an agreement existed, as alleged by the appellants, he would have expected that Nannie and her property be responsible for this, and would not have made the conveyance to the Cohens. Furthermore, as pointed out by the chancellor, it has been generally held that under an agreement to furnish care and support to an aged or infirm parent, the promisor is not required to pay money for that support, when such parent cannot be given adequate care in that home and it is necessary to send him elsewhere for treatment. The duty consists only of giving the parent care and support in the family, unless it is otherwise agreed, 50 *American Jurisprudence,* page 876; *Merchants National Bank v. Crist,* 140 Iowa 308, 118 N. W. 394, 23 L. R. A. (N. S.) 526. It was said in *La Rocque v. Martin,* 344 Ill. 522, 176 N. E. 734: "* * * by the use of the words 'takes care of me till I die' he had in mind the ordinary care and attention that he had theretofore been receiving as a member of the household." *Tibbetts v. Curtis,* 116 Me. 336, 101 A. 1023. It was said in *Brandenburg v. Harshman, supra:*

"After the death of the daughter, the granddaughter carried out the actual or implied arrangement to take care of the appellee, until such time as it became impossible for her to do it. When it became impossible, then a new situation arose." We are therefore of opinion that the chancellor was correct in dismissing the bill of complaint in this first case.

In the second case, although the chancellor in his opinion held that the conveyance on November 29, 1950, of Lot No. 5 from Mr. Larrimore to the Cohens should not be declared to be a mortgage, he provided in his decree that, if James F. Larrimore, to whom Lot No. 5 was devised in Mr. Larrimore's will, paid to the Cohens or into the registry of the court the sum of $1,391.59 with interest from April 13, 1951, and all taxes and costs, the said Cohens should convey to the said James F. Larrimore Lot No. 5 aforesaid free and clear of all claims of the said Cohens and that, if James F. Larrimore failed to make said payments within thirty days, the Cohens should hold said property free and clear of any claim of James F. Larrimore. We are advised that James F. Larrimore, in order to protect his rights, has paid this amount into the court, not thereby waiving any right to dispute the decree and to appeal. The Cohens, as appellees, have not appealed from that decree. Therefore, they cannot here contest the lien placed by the decree on Lot No. 5. *Rossi v. Mewshaw,* 195 Md. 323, 328, 329, 73 A. 2d 458; *Victor Lynn Lines, Inc. v. State,* 199 Md. 468, 478, 87 A. 2d 165. As was said in *Harrison v. Robinette,* 167 Md. 73, 173 A. 60, at page 83: "* * * a decree may not be reversed for the benefit of one who did not appeal therefrom, even though as to him it was both erroneous and injurious. *Frederick County v. Page,* 163 Md. 619, 631, 164 A. 182; *Gordon v. Miller,* 14 Md. 204; *Lanahan v. Latrobe,* 7 Md. 268; 4 *C. J.* 697." *Pratt v. Johnson,* 6 Md. 397; *Syfer v. Fidelity Trust Co.,* 184 Md. 391, 397, 41 A. 2d 393. We must therefore consider the property deeded to the Cohens as security for payment of the sum specified in the decree.

Six days after the death of Mr. Larrimore, the Cohens filed in the Orphans' Court for Anne Arundel County their claim in the amount of $1,475.09 against Mr. Larrimore's estate for his care in their Home. This claim was immediately rejected in whole by his administrator in writing and no suit was entered by the Cohens to collect. Code, (1951), Article 93, Sections 114 and 115, provide that where such a claim is exhibited against an administrator or executor in any form and he shall refuse payment thereof in writing, "such claim shall be forever barred unless the creditor shall bring suit upon the same within nine months after such rejection." The appellant claims that by not entering suit within the nine month period nothing is owing to the Cohens on this claim and, therefore, he should be decreed to have ownership of Lot No. 5 with the right of disposition, and with an injunction against future assertion by the Cohens of said claim by action at law suit, in equity, or otherwise.

It has been repeatedly held by this Court that Sections 114 and 115, *supra*, create a statutory bar as distinguished from a mere period of limitations which may be waived. It extinguishes the right to sue, not merely the remedy. *Maskell v. Hill*, 189 Md. 327, 337, 55 A. 2d 842; *Donnally v. Welfare Board*, 200 Md. 534, 540, 541, 92 A. 2d 354. The purpose of these sections is to prevent a creditor with a controverted claim from unduly prolonging the settlement of the decedent's estate. *Davis v. Winter*, 172 Md. 341, 348, 191 A. 902. The effect of these sections, as stated in *Zollickoffer v. Seth*, 44 Md. 359, is that "* * * not only is the executor exonerated, but he is required to pay out or distribute the money retained, and the creditor is forever barred all right of recovery against the *assets of the estate*, no matter in whose hands they are found." (Italics supplied). This statement was repeated in the case of *Baker v. Cooper*, 166 Md. 1, 15, 16, 170 A. 556.

Here, the effect of the decree of the chancellor was to hold that the lien on the lot was a mortgage to secure

the payment of a debt. We have been unable to locate any authority which holds that, if a decedent at the time of his death is a mortgagor, the mortgagee by filing proof of the indebtedness which the mortgage secures against the estate and not suing within the statutory period, is prevented from collecting from the security held under the mortgage. There are several cases which hold to the contrary. In speaking of claims against a decedent's estate, it is said in 34 C. J. S. at page 742: "* * * the short statute of limitations does not operate against an action to foreclose a mortgage or other lien on property of decedent, where no deficiency judgment is sought or granted." Here, no deficiency judgment is sought against Mr. Larrimore's estate. In *Fox v. Bernard,* 29 Nev. 127, 85 Pac. 351, it is said at page 352: "It is also urged that suit was not begun within the time required by the provisions of the probate act after the rejection of the claim by the executrix. Whether this is so is immaterial for although she as executrix is named as a party defendant, the allegations of the complaint and the decree may be considered as running against the property only. No judgment for any deficiency after sale or otherwise against the estate is demanded or given by the decree, which is directed only against the premises, and plaintiff's rights to this extent would not be curtailed nor affected by failure to present a claim to the executrix, nor by her rejection of the claim filed, nor by his omission to sue within the time prescribed for commencing actions on rejected claims against estates of deceased persons, as is necessary when it is desired to reach the assets of the estate. The case of *Devereaux Mortgage Co. v. Huggins,* 46 Idaho 74, 266 Pac. 421, involved an action to foreclose a mortgage on real estate and to recover judgment for any deficiency against the estate of the deceased, the mortgage claim having been filed in the estate and rejected. Suit was not brought within the statutory period. The court there decreed foreclosure and sale of the mortgaged property to satisfy the amount due the mortgagor, but denied any other or further relief.

See also *Ware v. Weatherby's Ex'rs.*, N. J., 45 A. 914. We are of opinion that the lien upon Lot No. 5, as decreed by the chancellor, is not barred.

The appellant further claims that he should not be compelled to pay appellees their full claim with interest and costs or lose Lot No. 5, devised to him, without at least a trial of the rejected and disputed claim on its merits in an appropriate proceeding. Testimony was here offered that Mr. Larrimore with his own consent was placed in the Home and that he received care and treatment there. Mrs. Cohen testified that Mr. Larrimore was charged $51.50 per week. There is no testimony here to show that this was not a fair charge for the services rendered, although Mrs. Cohen was questioned on cross-examination by appellant's attorney as to the reasonableness of the charge. The decrees will be affirmed.

*Decree affirmed, with costs.*