## MACKEY *v.* DAVIDSON ET UX.

[No. 179, September Term, 1959.]

*Decided April 7, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William B. Evans,* with whom were *Kintner & Evans* on the brief, for the appellant.

*J. Albert Roney, Jr.,* with whom were *Roney & Fockler* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

Elizabeth S. Mackey instituted this proceeding in equity on May 27, 1959, seeking the rescission of a partially performed agreement to support, on the ground of alleged breaches; an accounting; and other relief. After answer and hearing, the chancellor decreed that the bill be dismissed, but, on reargument, assumed and retained jurisdiction to administer a "trust", and ordered an accounting of receipts and disbursements, with costs to be paid out of the "trust". The complainant appeals.

In 1956 the appellant and her husband, a childless couple, were each 86 years of age, and her eyesight was failing. Ruth Davidson, one of the appellees, is the niece of Mrs. Mackey. The Mackeys resided at 1936 Gilpin Avenue, Wilmington, Delaware, in a house which they owned. The Davidsons re-

sided in Elkton, Maryland. On December 13, 1956, Mrs. Mackey transferred an account of $2,660.26 in the Artisans' Savings Bank to the names of herself and niece for purposes of convenience, and at the aunt's request there were two withdrawals by the niece of $100 each in January and May of 1957, to pay household expenses. At that time Mrs. Mackey's vision had become so dim that she was unable to write checks or leave the house unescorted. Ruth testified that Mrs. Mackey told her, in regard to the account, "if I don't use this money * * * it's yours." It is clear, however, that Mrs. Mackey retained dominion over, and the power to withdraw, the fund. It may be noted that although the account was described as joint, payable to either or survivor, there was no declaration of trust.

On June 19, 1957, the Davidsons and the Mackeys executed a written agreement providing: "In consideration of your deeding the property 1936 Gilpin Avenue, Wilmington, Delaware to us jointly, and giving us the entire contents of said property, for the consideration of Five Dollars ($5.00), receipt of which is hereby acknowledged, we jointly and severally agree to provide for your care, maintenance and comfort in the Pratt Nursing Home, at North East, Maryland, for the remainder of your joint lives and the life of the survivor; and also, to pay your burial expenses." On July 1, 1957, the Mackeys moved to the Pratt Nursing Home. Mr. Mackey died June 15, 1958. Mrs. Mackey is still there. On June 26, 1957, the property described was conveyed by duly recorded deed from the Mackeys to the Davidsons. Thereafter, the Davidsons spent about $900 on repairs and improvements, rented the house for $30 a month, and after eighteen months sold it for $10,500. The net amount, after payment of commissions, $9,930.18, was deposited in the People's Bank in Elkton, in the name of the Davidsons, "trustees for Elizabeth S. Mackey." The rentals they had collected were deposited in their checking account in the Elkton Banking & Trust Company.

At the time the written agreement was executed, Mrs. Mackey also had an account of $6,852.47 in the Wilmington Savings Fund Society. On June 21, 1957, this account was

transferred to the names of Mrs. Mackey "or" Mrs. Davidson. This was not a trust account, and the pass-book contains no language to indicate survivorship. Mrs. Mackey testified that the parties had verbally agreed that $5,000.00 should be given, as well as the house, as a part of the agreement to support. Mrs. Mackey wanted to draw out $5,000.00, and pay it to Ruth, but Ruth "didn't want me to. She said it would draw more interest with it all in there together." It was agreed that Ruth should draw $200.00 a month "toward our maintenance." Mrs. Davidson also testified that the agreement was that she was to have the house and $5,000.00. As to the balance in the account, she testified that Mrs. Mackey told her she wanted to give the balance away. Mrs. Davidson persuaded her not to do so at that time because Mrs. Mackey "might need it".

Mr. Mackey had been employed by the B. & O. Railroad and received a pension of $89.00 a month. These checks were turned over to Mrs. Davidson until his death, and Mrs. Mackey turned over her pension checks of $44.50 a month, until February 1959. Mrs. Mackey testified that there was no agreement to do this, that it was not part of the support agreement, or any subsequent agreement. She turned the checks over because "they expected it", because "I was good natured, I guess, and I thought they needed it more." Mrs. Davidson testified she deposited the pension checks in her own account in the Elkton Banking & Trust Company, along with the rent money, and proceeds from the sale of the contents of the house, "everything that belonged to Mrs. Mackey was in that". She also deposited in that account the $200.00 monthly withdrawals from the Wilmington Savings Fund account. From the Elkton Banking & Trust Company account she paid for the Mackey's room, board and clothing. "I was supposed to be taking care of all their affairs and paying all their bills." She did not testify that the pension checks were included in the agreement. She testified that Mrs. Mackey had not "really wanted to do it that way. She just wanted to keep that."

After Mr. Mackey's death, the proceeds of a $1,000.00 railroad life insurance policy were paid to Mrs. Mackey. Orig-

inally she had been named as sole beneficiary, but a few days after the agreement was executed Mrs. Davidson's name was placed on the policy as contingent beneficiary, if Mrs. Mackey should predecease the insured. This contingency, of course, did not happen. However, Mrs. Mackey paid Mr. Mackey's funeral bill of $718.72 out of the proceeds. She claimed that Mrs. Davidson should reimburse her for this, "because that agreement provided for burial," but that Mrs. Davidson refused to do so. Mrs. Davidson also received $150.00 from monies Mr. Mackey "had in the Brotherhood of Maintenance and Ways of the Railroad", of which she had been named beneficiary. She deposited this money, however, in the Wilmington Savings Fund account.

Mr. Davidson's version of what occurred is somewhat different. He testified that they were to receive the house and contents and "immediately" $5,000.00. "My understanding of the whole thing was that everything was to be turned over to us." There was also the testimony of a neighbor, Miss Birt, who witnessed the written agreement, that Mrs. Mackey had told her: "We are turning over everything to Ruth and George that they in turn will take care of us." Of course, that is not what the agreement provided. It is contradicted not only by Mrs. Mackey but by Mrs. Davidson as well. The aunt and the niece were obviously the parties who did the negotiating. Mr. Davidson testified that the expenditures upon the house were ultimately withdrawn from "Mrs. Mackey's account". When asked if he thought the money was his or if he should make an accounting, Mr. Davidson testified: "I have never testified to the fact that that money is mine. That money is not mine." It is not clear just what money he was referring to, but at least it seems clear that he was not asserting a claim to whatever Mrs. Mackey possessed, under the original or any subsequent agreement. His testimony as a whole seems to indicate simply that they expected to receive whatever she had left at her death.

On October 23, 1958, Mrs. Mackey closed out the joint account of $2,607.15 in the Artisans' Savings Bank, and opened an account in her own name in the North East Bank, adding the names of two other nieces. Mrs. Davidson learned

of this, and closed out the joint account in the Wilmington Savings Fund of $2,684.44 and deposited it in the Peoples Bank account. Up to that time Mrs. Davidson had withdrawn a total of $4,900 in monthly sums of $200 except on three occasions when she withdrew $100.00. Bad feeling also developed because Mrs. Davidson refused to pay a bill of $44.89, for cosmetics and other sundries and a hospital bill of $53.00 incurred by Mrs. Mackey without Mrs. Davidson's prior approval.

The chancellor in his first opinion found that the money in the Artisans' account was not included in the agreement to support, but that the balance, over and above the $5,000.00 in the Wilmington Savings Fund, was "intended by the Mackeys as additions to the money given by them for their support." He found that a confidential relationship existed between the Mackeys and the Davidsons, the latter being the dominant parties. He also found that Mrs. Mackey was mentally alert and physically fit, except for her blindness. He found that Mr. and Mrs. Mackey turned over the pension checks as "voluntary contributions to the trust", and that Mrs. Mackey "voluntarily" paid the funeral bill of Mr. Mackey. At the time of trial the Davidsons had in their own names $129.37 in the Elkton Banking & Trust Company and $11,323.78 in the People's Bank. A rough accounting prepared by the Davidsons indicated they had spent a total of $5,768.10 for the Mackey's support. The chancellor found that there was a valid and enforceable contract to support, and that there had been no overreaching and no substantial breach.

After reargument, the chancellor made somewhat different findings. He stated that the Mackeys "intended that the Davidsons should have all of their property on the death of the survivor of them." But he also stated that Mrs. Mackey did not relinquish dominion and control over all her property. "Mrs. Mackey retained control of the Artisans' Savings Bank account, the pensions, and the money in her North East Bank account. These items did not become part of the trust * * * the money in the Wilmington Savings Fund, however, became a part of the trust." He adhered to the view that the funeral bill was voluntarily paid. He altered the award of costs

against the complainant, directing payment of costs by the defendants "from the trust fund."

We take a somewhat different view of the case. We think the real issues have been confused by failing to distinguish between the terms of the contract and the supposed "trust". For present purposes we shall assume, as did the parties and the court below, that all questions relating to breach of contract should be resolved by Maryland law, as that was the place of performance, although the contract was made in Delaware. See *Restatement, Conflict of Laws,* § 361 comment a. The contract was partly in writing and partly oral. Once the terms of the contract are determined, as a matter of fact, the legal principles seem clear. In regard to the fund in the Artisans' Savings Bank, there can be no doubt that Mrs. Mackey reserved the right to withdraw it and thus terminate the trust therein, if any. Even had the account been in the trust form approved in Maryland, the presumption of gift may be rebutted. *Kuhl v. Reese, Administrator,* 220 Md. 459, 461, 154 A. 2d 712. It may be that the Davidsons were disappointed in having their expectancy cut off in favor of other nieces. Yet Mrs. Davidson admitted that Mrs. Mackey had a right to use it as she pleased. It was only to be hers if Mrs. Mackey did not "use" it. Such "use" was not limited to payment for the Mackeys' support, which would relieve the Davidsons, *pro tanto,* of an obligation they had contracted to assume. Similarly, Mrs. Davidson admitted that after the execution of the agreement Mrs. Mackey was perfectly free to give away the balance in the Wilmington Savings Fund account, over and above the $5,000.00. She closed out this account because Mrs. Mackey "went behind my back and closed that other account." We think the evidence is clear that the balance in the Wilmington Savings Fund account was not included in the agreement to support, and that the agreement was that Mrs. Mackey should retain the right to dispose of it as she pleased. Interest earned on this balance should be accounted for to Mrs. Mackey.

With regard to the pension checks, they were not included in the agreement to support and Mrs. Mackey was not obligated to turn them over, but we think the evidence supports

the chancellor's first finding that they were valid gifts. Of course, she had a right to refuse to continue turning them over. Her reason for doing so was that she thought the Davidsons had less need for it after her husband's death, since the expense was less. But the evidence does not support the chancellor's finding that Mrs. Mackey's payment of the funeral bill was a gift. Her testimony that she expected repayment was not disputed. The proceeds of the life insurance policy of $1,000.00 were properly paid to Mrs. Mackey, and were not included in the support agreement, which clearly called for payment of burial expenses by the Davidsons. On the other hand, the Brotherhood fund of $150.00 was properly paid to Mrs. Davidson and should be credited to her. The rent money, and the proceeds from sale of the house and contents, belong to the Davidsons under the terms of the agreement, but they should be charged with all expenses for maintenance, repairs, taxes, insurance, and sales costs, subsequent to the date they acquired title to the house. They claimed credit for all these items in their rough accounting.

We find nothing in the case to support the theory of an express trust. But where a transfer of property is made under an agreement between parties in a confidential relationship, a court of equity may impose a constructive trust as a remedy to insure performance. See *Nowell v. Larrimore,* 205 Md. 613, 621, 109 A. 2d 747, and cases cited. See also *Dove v. White,* 211 Md. 228, 232, 126 A. 2d 835. Cf. *Brandenburg v. Harshman,* 193 Md. 104, 65 A. 2d 906. We think the action of Mrs. Davidson in withdrawing from the Wilmington Savings Fund and depositing in her own account the balance, in excess of the $5,000.00 to which she was entitled, and her action in refusing to pay the funeral bill and the small items which we think she was obligated to pay, would justify the Court in retaining jurisdiction on the ground stated. We find nothing unfair or inequitable in the terms of the agreement, as we construe it. The Davidsons reiterated their willingness to care for Mrs. Mackey as long as she lives, and to perform their contract as the court might interpret it. Under the circumstances, we see no occasion to decree a rescission of the contract, or to appoint new trustees. But the corpus of

the trust should not include items not covered by the agreement.

Whether the court could require further performance, in the event that the entire consideration paid for the undertaking to support is exhausted before the death of Mrs. Mackey, is a question we need not now consider. We shall affirm the first paragraph of the decree, reverse the second paragraph, and remand the case for passage of a decree, or supplementary decree, requiring the defendants to account in accordance with the views here expressed, costs to be paid by the appellees, but not out of the moneys awarded to them in the proposed accounting, constituting the corpus of the trust.

> *Decree affirmed in part, reversed in part and case remanded for the passage of a decree in accordance with the views expressed herein, costs to be paid by the appellees.*