PENINSULA METHODIST HOMES AND HOS-
PITALS, INC. *v.* CROPPER, Individually and
as Executor u/w of Adele H. Truitt, ET AL.

[No. 219, September Term, 1969.]

*Decided February 10, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*Hamilton P. Fox*, with whom were *Hearne, Fox & Bailey* on the brief, for appellant.

*Lee W. Bolte*, with whom were *Sanford & Bolte* and *Edward P. Hammond, Jr.* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

The Peninsula Methodist Homes and Hospitals, Incorporated (Manor House), appellant, filed two equity suits in the Circuit Court for Worcester County. One suit named Reese F. Cropper, individually, as well as in his capacity as executor under the will of Adele H. Truitt, together with the Calvin B. Taylor Banking Company of Berlin, Maryland (Banking Company), as party defendants. This suit sought to have the court impose a constructive trust upon certain funds on deposit in the Banking Company in the name of Adele H. Truitt, recently deceased, on the theory that prior to her death she had by letter requested that the funds on deposit be transferred to the appellant and her request had not been carried out. Cropper was joined individually in this action because he had a general power of attorney from Adele H. Truitt and allegedly failed to carry out her directions to transfer the funds prior to her death. The second equity suit was in the nature of a bill for injunction which sought to enjoin Cropper as executor under the will of Adele H. Truitt from disbursing the funds on deposit with the Banking Company as part of the estate of Adele

H. Truitt. The lower court sustained Cropper's demurrer, as an individual, to the bill seeking to impose the trust on the funds without leave to amend and also dismissed as to the other defendants the bill seeking to impose the trust. The lower court further dismissed a temporary restraining order and the bill for injunction which sought to prevent the distribution of the funds by Cropper as executor. It is from these orders of the court below sitting in equity that the appeal has been taken.

The events which give rise to this controversy began on April 27, 1967, when Cropper, executive vice-president of the Banking Company, went with B. G. Smith, the assistant cashier and John H. Williams, a used car dealer, to the home of Mrs. Truitt who was then living in Salisbury, Maryland. On that occasion Mrs. Truitt executed a will which Cropper testified he copied out of a form book that was once owned by Mr. Calvin B. Taylor. On the same date of April 27, Mrs. Truitt also executed a power of attorney to Cropper which was also witnessed by the same two gentlemen from Berlin, Maryland, Messrs. Smith and Williams. Cropper was both the executor and the residuary legatee named in the will.

On June 3, 1967, Mrs. Truitt, who was then 81 years of age, entered the Methodist Manor House at Seaford, Delaware to live. Shortly thereafter she communicated both by letter and verbally with Mr. Milton H. Keene, the administrator of the Manor House, in which she stated her desire that her funds on deposit with the Calvin B. Taylor Banking Company be withdrawn and a certified check made to the favor of the Methodist Manor House, Seaford, Delaware. It should be noted that when she was admitted to the Manor House she stated on her application that she was able to fund a Founder's Fee of $6500, but could only make a part payment of a monthly fee of $250.00. She listed her savings account in the Banking Company as $36,418. Shortly after her admission she made a payment to the Manor House in the amount of $500.00 which was a partial payment on the Founder's Fee. She did this by way of a check which she had in

her possession and which was signed by her and drawn on the Banking Company. Shortly after receiving the communications from Mrs. Truitt, Mr. Keene met with her and as a result of this he wrote the following letter at her request:

"June 7, 1967

Calvin B. Taylor Banking Co.
Berlin, Maryland
Gentlemen:

I, Adele H. Truitt, hereby request that any and all of my account with the Calvin B. Taylor Banking Company of Berlin, Maryland be closed out, and that a Cashier's Check be drawn in the amount of the balance or balances in favor of The Methodist Manor House, Seaford, Delaware.

.............................
S/   Adele H. Truitt

.............. ............ . .
S/   Notary Public"

Keene hand delivered this letter to Cropper, as an officer of the bank, on the following day June 8, 1967. At that time Cropper informed Keene that he had a power of attorney from Mrs. Truitt and that he would not comply with the request contained in the letter of June 7. At the hearing in the lower court Cropper raised some questions about the manner in which Mrs. Truitt had signed the letter because she had signed it Adele H. Truitt instead of Adele Hunley Truitt, the manner in which she usually signed papers and checks. However, he stated under oath that he supposed it was Mrs. Truitt's signature. Keene returned to the Manor House and explained to Mrs. Truitt that he was unable to obtain her funds. He thereupon prepared and had Mrs. Truitt execute the following notarized statement which was in effect a revocation of the power of attorney:

"June 9, 1967

I, Adele Truitt, being of sound mind and in

full possession of my reasoning faculties, hereby rescind any power of attorney for the management of my affairs which may have at any time in the past been granted to Mr. Reese Cropper of Berlin, Maryland, or to any other person, corporation, or agency named by him for this purpose.

I hereby further direct that any funds in my name presently on the books, or in the care of the Calvin B. Taylor Banking Company are to be made available to me, or to those named by me.

...........................
S/   Adele H. Truitt

...........................
S/   Notary Public"

This revocation was forwarded to Cropper; however, he did not regard it as having the effect of revoking the power of attorney. Cropper requested "a personal, private interview" with Mrs. Truitt. On July 13, 1967, Cropper went to the Methodist Manor House and interviewed Mrs. Truitt in the presence of Keene who remained in the room during the interview. By letter of July 14, 1967, Cropper informed Keene that he would not honor the revocation of his power of attorney or comply with Mrs. Truitt's request until he had received a certification from at least two qualified "Doctors and Psychiatrists" that she was mentally able and capable of "executing a valid contract and managing her affairs." He further stated that if such evidence was forthcoming he would expect to be reimbursed for expenses and services which he had incurred. In the same letter he enclosed a Cashier's check for $6500 payable to the Manor House,[1] "as a guarantee

---

1. Cropper apparently thought at this time that Mrs. Truitt was mentally competent otherwise his power of attorney to obtain this check may have been revoked by operation of law. *Chew v. Bank of Baltimore*, 14 Md. 299 (1859). Cf. Code (1969 Repl. Vol.), Art. 93A, § 601. See 29 Md. L. Rev. 85 at 121, *Powers of Attorney*.

fund, for the admission and care of Mrs. Truitt as of this time." It should be noted that Cropper had no misgivings about his authority to make this payment out of Mrs. Truitt's account by virtue of his power of attorney. He also testified that at the time Mrs. Truitt had executed the power of attorney in his favor she had delivered to him her bank account passbook for safekeeping.

Mrs. Truitt also made a check to the Manor House in the amount of $526.34 on July 3, 1967, so that during the two months that she was in the Manor House prior to her death, the Manor House received the Founder's Fee of $6500 and in addition a total of $1026.34. Apparently, this latter amount was towards her care and maintenance.

Keene testified, that if a person was in a position to pay the $6500 Founder's Fee and a $250.00 a month residential charge then there was no further question about such a person's finances. However, Mrs. Truitt had some question about her ability to continue indefinitely to make the $250.00 monthly payments and, shortly after her admission, Keene testified that he discussed with her, in the presence of a Father Hart, the feasibility of her entering into a gift annuity agreement with the Manor House. The form of such an agreement was never proffered in evidence but there was testimony that this would have required a deposit of $28,000 on the part of Mrs. Truitt. This would have relieved her of any further monthly payments. Keene also stated that "it is a gift in the sense that whatever remains in that account remains with the Manor House at the time of the decease of the individual." However, he elsewhere stated in his testimony that if she ultimately decided not to sign a gift annuity agreement, or decided she wanted to go elsewhere, then the Manor House would have had to have made some adjustment with her. The testimony further shows that such a gift annuity agreement would have to be approved by a finance committee, located in Wilmington, Delaware, which would determine for the Manor House and the resident, what in their opinion was an equitable contract. Keene further stated that the reason the contract was not signed,

prior to the withdrawal of the funds from the Banking Company, was that they did not know the status or full extent of Mrs. Truitt's accounts with the Bank.

On August 2, 1967, Cropper was notified by a letter from counsel that Mrs. Truitt was represented by an attorney and enclosed in the same communication was a photostatic copy of a certification as to her mental competency signed by two medical doctors and a psychiatrist. Mrs. Truitt died in the Manor House infirmary the following day, August 3, 1967. Following her death, Cropper qualified and was appointed executor of her last will and testament and the proceeds of her savings account with the Calvin B. Taylor Banking Company are now in his possession. These proceedings were instituted by the Peninsula Methodist Homes and Hospitals, Incorporated, in June of 1969.

The substance of the appellees' argument, which was adopted by the lower court, was that the bill of complaint failed to establish a case against Cropper as an individual, in that the request of Mrs. Truitt for the withdrawal of the funds, which he ignored, was directed not to him personally but to the Banking Company; and further that the Banking Company acted prudently in refusing to recognize the request for the withdrawal of her funds because it was not in the proper form required by the regulations of the Banking Company for the withdrawal of funds from a savings account. Accordingly, the appellees contend, there was no legal basis to support either the imposition of a constructive trust or the granting of an injunction to enjoin the disbursement of the funds.

While we disagree with the conclusions of the lower court, and in this opinion adopt a different rationale, yet, upon remand, we are constrained to say that it may well be that the same results as are presented by the present posture of the case will be reached. However, this will depend upon the evidence that may be adduced at a further proceeding.

We are of the opinion that the order sustaining the demurrer of Cropper, as an individual, to the bill of com-

plaint should be reversed. We think that Cropper occupied a position of confidential relationship with Mrs. Truitt because of the existing power of attorney, his position of having advised her on matters of finance for many years, and the trust imposed in him in the drafting and execution of her will. *Nagel v. Todd*, 185 Md. 512, 516, 517, 45 A. 2d 326 (1946), and cases cited therein; 15A C.J.S. pgs. 351, 352 *Confidential*.

We think that as a part of the duty he owed Mrs. Truitt, Cropper should have seen that the request for the withdrawal of the funds from the Banking Company was carried out. It is true that her letter of request was addressed to the Banking Company; however, it was hand delivered to him and we do not think that he can insulate his relationship with her, as her attorney in fact, under the guise that he was wearing his hat as an officer of the Banking Company when the letter was tendered him. Equity is concerned with substance and not with form. *Miller v. County Commissioners*, 226 Md. 105, 118, 172 A. 2d 867 (1960). Certainly it is doubtful that he would either have met Mrs. Truitt or have become her attorney in fact or the residuary legatee under her will, but for his position in the Banking Company. His testimony reveals that he "supposed" it was her signature and certainly this was a fact that he could have easily verified by telephone or personal contact. 2 C.J.S. *Agency*, § 4 and § 148. He had her passbook in his possession and it was within his own physical means to carry out her desire as her attorney in fact. If he had any question about her mental capacity, assuming he had not seen her for some time, then this was also a matter which he could have quickly verified instead of flatly refusing to accommodate her request.

The lower court stressed the formality of the Banking Company's regulations which had to be complied with before a depositor could withdraw funds, such as the presenting of the passbook and the signing of the withdrawal slip. Again, these were matters especially within the capability and capacity of Cropper to execute. As her attor-

ney in fact, he had the physical means and legal authority to accomplish this, and as an officer in the Banking Company he had knowledge of its requirements. This is quite evident from his subsequent unilateral action in causing the certified check for $6500 to be withdrawn from her account and forwarded to the Manor House to cover her "Founder's Fee."

Since it is our opinion that he could, and should, have complied with her request for the withdrawal of funds, we do not find it necessary to consider, the effect of the later revocation of the power of attorney. We think we must view this case as though the request for the withdrawal of the funds had been complied with, and ascertain the status of the fund as though it had been withdrawn.

This leads us to a phase of the case fraught with speculation and conjecture, at least, as far as the present state of the record is concerned.

The appellant would have us believe that Mrs. Truitt either intended that the funds be a gift to the Manor House, or that as soon as the formalities could have been concluded, the funds would have been used as the consideration for a gift annuity agreement calling for the payment by Mrs. Truitt of approximately $28,000. Keene's testimony indicates that this would have relieved her from further monthly payments for her support and maintenance and that upon her death any funds remaining from the $28,000 would have vested in the Manor House. However, such a contract was never executed nor was the form of such a contract proffered in evidence.

We find no evidence in the record that Mrs. Truitt ever intended that the $28,000 be considered an outright gift to the Manor House. On the other hand, it is reasonable to assume that with a cashier's check drawn to the favor of "The Methodist Manor House, Seaford, Delaware," in its possession, that the Manor House would have promptly deposited the check to its own account and would have proceeded in a timely manner to formalize the gift an-

nuity agreement with Mrs. Truitt. Assuming, *arguendo,* that such an assumption is valid, as events turned out, the Methodist Manor House sustained a loss as a result of the dereliction of Cropper in not honoring the letter of request for withdrawal of the funds. The request for withdrawal, with the direction that a certified check be made to the order of the Manor House, was dated June 7, 1967, and delivered the following day. Mrs. Truitt's death did not occur until August 3, 1967, some 56 days later.

The appellant would have us impose a constructive trust in their favor on the funds represented by the bank account now in the possession of Cropper as executor of Mrs. Truitt's estate. Maryland recognizes the constructive trust doctrine and has on numerous occasions applied it. *Mackey v. Davidson,* 222 Md. 197, 205, 159 A. 2d 838 (1960) ; *Nowell v. Larrimore,* 205 Md. 613, 621, 109 A. 2d 747 (1954) ; *Carter v. Abramo,* 201 Md. 339, 343, 93 A. 2d 546 (1953) ; *Bass v. Smith,* 189 Md. 461, 470, 471, 56 A. 2d 800 (1948) ; *Long v. Huseman,* 186 Md. 495, 507, 47 A. 2d 75 (1946) ; *Trossbach v. Trossbach,* 185 Md. 47, 52, 42 A. 2d 905 (1945) ; *O'Connor v. Estevez,* 182 Md. 541, 555, 35 A. 2d 148 (1943) ; *Springer v. Springer,* 144 Md. 465, 479, 125 A. 162 (1924). Cf. *Reliance Ins. v. Bennington,* 142 Md. 390, 395, 121 A. 369 (1923), wherein the insured in a life insurance policy did all within her power to change the beneficiary prior to her death, but died before the forms were actually complied with. This Court held that it would give effect to her intentions and consider the beneficiary as having been changed. In doing this the Court invoked the maxim that equity regards that as done which ought to have been done.

This Court, however, before it will impose a constructive trust, has required clear and convincing evidence to support the proposition that circumstances are such in a particular case as to render it inequitable for the holder of the legal title to assets to retain it. See also *Blair, Executor v. Haas,* 215 Md. 105, 115, 137 A. 2d 145 (1957),

and *Masters v. Masters,* 200 Md. 318, 332, 89 A. 2d 576 (1952).

When the case was heard by the learned chancellor below, he did not reach the question of the imposition of a constructive trust on the funds, as he based his decision on the premise that the Banking Company and Cropper acted properly in refusing to recognize the letter of request for the withdrawal of the funds. In his opinion the chancellor stated:

> "Finding these facts to be true, the Court then does not desire any memoranda as to the legal question of a resulting trust in favor of Peninsula Methodist Homes and Hospital, Inc. which was a secondary question to the evidentiary question. That question I am not resolving, I am not saying if I had found that the June 7th communication created an obligation on the Calvin B. Taylor Bank to withdraw those funds it would have automatically created a trust in favor of the Peninsula Methodist Homes and Hospitals, Inc. I am not saying that. I am only saying that because I have reached this decision on the facts, I don't need to resolve the other issue."

We think that in fairness to all parties, the case should be remanded for the purpose of determining whether facts exist which would warrant the imposition of the trust. Certainly, on the present state of the record there is no clear and convincing evidence as to the character and form of the gift annuity agreement. In the court below the issue was not resolved as to the mental competency of Mrs. Truitt at the time she signed the letter requesting the withdrawal of her funds. Such matters as the part which the finance committee of the appellant plays in establishing the amount of the gift annuity and the manner in which it would be computed were left unanswered. The testimony of Keene was at best ambiguous as to whether the Manor House would have considered the delivery of the certified check made to its favor, as

substantial performance by Mrs. Truitt of her part of the transaction, leaving her signing of the contract only a pro forma act. There was no evidence as to the time it normally took to consummate such an agreement or what was the significance, if any, of the acceptance of the contract by the Board of the appellant. There is no testimony as to how the appellant would have immediately held the funds had the certified check been delivered to it; that is, whether it would have been deposited in a bank to the use of Mrs. Truitt, or held in escrow, deposited in a special account, in a trust fund or commingled with the general funds of the appellant. In short, there is nothing from the present state of the record from which one may conclude who would have been the legal or equitable owner of the funds, had the withdrawal request been honored.

The name of a Father Hart was mentioned by Keene as a person who was present when the matter of the gift annuity agreement was discussed with Mrs. Truitt, yet the record is barren as to any testimony from him.

In sum, we think the chancellor should again hear testimony bearing on the existence or non-existence of a constructive trust. If clear and convincing evidence supporting such a trust is adduced, then we are of the opinion that a trust should be imposed in favor of the appellant. On the other hand, should events prove that such evidence does not exist, and such may be the case, then the funds would become a part of Mrs. Truitt's estate to be disbursed by the executor in accordance with the terms of her will. Finally, until such time as there is a determination upon a re-hearing of the case, the lower court should issue an order enjoining the executor from making any distribution of the assets represented by the savings account in the Banking Company.

> *Orders appealed from reversed, case remanded for further proceedings in conformity with this opinion, costs to abide result.*